(No. 35388.—

ANTHONY C. KOTRICH *et al.*, Appellants, *vs.* THE COUNTY of DU PAGE *et al.*, Appellees.

*Opinion filed March 31, 1960—Modified on denial of rehearing May 16, 1960.*

RATHJE & WOODWARD, of Wheaton, and NATHAN GLICK, and LAWRENCE E. GLICK, both of Chicago, (ALFRED E. WOODWARD, and ARTHUR FRANKEL, of counsel,) for appellants.

WILLIAM J. BAUER, State's Attorney, of Wheaton, and DALLSTREAM, SCHIFF, HARDIN, WAITE & DORSCHEL, of Chicago, (EDWARD J. VERTOVEC, Assistant State's Attorney, and ROBERT S. HUNT, of counsel,) for appellees.

BENJAMIN S. ADAMOWSKI, State's Attorney, of Chicago, (FRANCIS X. RILEY, and RICHARD V. HOUPT, Assistant State's Attorneys, of counsel,) *amicus curiae*.

Mr. JUSTICE SCHAEFER delivered the opinion of the court:

This is a declaratory judgment proceeding which involves the validity of a "special use" permit granted by the defendant, the board of supervisors of Du Page County, to the defendant, Salt Creek Club, under the terms of the Du Page County zoning ordinance. The primary issues

concern the statutory authority of the county to provide for "special uses" in its zoning ordinance, and, if the authority exists, the conditions that govern its exercise.

The defendant club is a not-for-profit corporation organized for social, educational, and athletic purposes. It owns the property in question, a six-acre parcel of land now zoned for R-2 single family residence use. On this land it proposes to build a clubhouse, a swimming pool, tennis courts and a parking area for use of its anticipated membership of 275 families.

The club applied to the zoning board for a special use permit under the county ordinance, to allow the construction of a private outdoor recreation center on the property. The board conducted a hearing and recommended to the county board that the special use permit be denied. Notwithstanding this recommendation, the county board passed a resolution granting the permit. The plaintiffs, who are adjacent property owners, commenced this suit in the circuit court of Du Page County to challenge the permit and the zoning ordinance under which it was granted. From a judgment sustaining the validity of the ordinance and the permit, they appeal directly to this court. The trial judge has certified that the validity of a county zoning ordinance is involved and that the public interest requires a direct appeal to this court. Ill. Rev. Stat. 1959, chap. 110, par. 75.

The special use is a relatively new method of land use control. Zoning ordinances embodying this technique retain the usual residential, commercial, and industrial zones, specifying the uses permitted in each zone. For each zone, however, special uses are also established which are permitted within the zone only if approved by the zoning board or the governing legislative body. The Du Page County ordinance follows this general scheme, and it specifies private outdoor recreational facilities among the special uses which may be permitted in the R-2 single family resi-

dence zone. Among other special uses permitted in this zone are colleges and universities, public outdoor recreational centers, rest homes, hospitals and sanitariums, planned developments of not less than 40 acres, and "public service uses" such as electric and telephone substations, filtration plants, and fire and police stations.

The first contention advanced by the plaintiffs is that the County Zoning Enabling Act (Ill. Rev. Stat. 1957, chap. 34, par. 152i, *et seq.*) does not authorize counties to employ this method. In support of this contention they argue that since the special use technique is not mentioned in the act, and indeed did not exist at the time the act was adopted in 1935, the legislature could not have intended to authorize it. Their position is that the legislature must specifically grant counties the power to adopt special use provisions, as it has done in the case of variations and amendments, and as legislatures of some other States have done.

They note also that procedural safeguards limit the exercise of administrative and legislative discretion with respect to variations and amendments. Written findings of fact must accompany every variation, and any variation rejected by the zoning board of appeals can be approved only by a three-fourths majority of the legislative body. The same extraordinary majority is required to approve any amendment if 20% of adjacent landowners object. It is argued that the legislature has thus indicated its intention that deviations from the established zoning pattern should be permitted only by the procedurally restricted methods included in the act.

Carl L. Gardner, a planning and zoning consultant, testified that the special use technique developed as a means of providing for infrequent types of land use which are necessary and desirable but which are potentially incompatible with uses usually allowed in residential, commercial and industrial zones. Such uses generally occupy a rather

large tract of land. They can not be categorized in any given use zone without the danger of excluding beneficial uses or including dangerous ones. A typical example was presented in *Illinois Bell Telephone Co.* v. *Fox,* 402 Ill. 617, where this court affirmed a judgment ordering a special use permit to issue for construction of a telephone exchange in a residential district.

Instead of excluding such uses entirely from certain zones because of the harm they might cause, or, despite the potential harm, including them because of the benefits they will bring, the special use technique allows a more flexible approach. It contemplates that the county board may permit these uses when desirable and, if necessary, impose conditions designed to protect nearby property owners. This seems to be an effective method of dealing with a narrow but difficult problem of land use control. Approximately 25 municipalities and counties in Illinois have incorporated it in their zoning ordinances, and the record shows that its use is increasing.

It is true that the procedural restrictions prescribed for amendments and variations, as well as the standards prescribed for variations, evidence a legislative plan to guarantee property owners some protection from piecemeal changes in the general zoning scheme by *ad hoc* determinations with respect to particular pieces of property. And since granting a special use permit involves an *ad hoc* judgment which may affect surrounding property owners in the same way as a variation or an amendment, unlimited application of the special use technique to land uses that can readily be accommodated within the customary categories would undermine the protection contemplated by the statute. But unlimited application of the special use technique is not required to meet the problem it was designed to solve. Only those infrequent uses which are beneficial, but potentially inconsistent with normal uses in the various zones, need be included.

The statute authorizes the board of supervisors "to regulate and restrict the location and use of buildings, structures and land for trade, industry, residence and other uses which may be specified by such board, * * *; to divide the entire county * * * into districts of such number, shape, area and of such different classes, according to the use of land and buildings, * * * as may be deemed best suited to carry out the purposes of this Act; to prohibit uses, buildings or structures incompatible with the character of such districts respectively; * * *." (Ill. Rev. Stat. 1957, chap. 34, par. 152i.) In our opinion, a residual category of those special uses which can not, without distortion, be included in the customary classifications, is permissible as a means of implementing the powers conferred by the statute.

Applying these criteria, we think that a private country club such as that involved in the present case may properly be classified as a special use in a single family residence zone. Such uses of land are often found in residential areas. Proximity to a club may increase the desirability of land. On the other hand, a club may also produce increased noise from bathers, tennis players, social functions and automobiles. If the parking area is not properly designed, headlights may shine in neighboring houses; if it is not large enough, members' automobiles will overflow onto neighboring streets. Increased traffic may produce safety hazards. Whether these undesirable consequences will occur depends upon the design of the club's facilities and its location within the zone. In such a case, governmental supervision of each situation is justified.

The plaintiffs also contend that the ordinance providing for special uses is invalid because it does not specify standards by which the county board of supervisors is to judge whether a special use permit should be granted. Although the ordinance does not prescribe standards in so many words, it does state that special uses are established

for the purpose of providing "for the location of special classes of uses which are deemed desirable for the public welfare within a given district or districts, but which are potentially incompatible with typical uses herein permitted within them  *  *  *." It also empowers the board of supervisors to impose "such  *  *  * conditions as it considers necessary to protect the public health, safety and welfare." A fair reading of the ordinance shows that it contemplates that the county board will weigh the desirability of the proposed use against its potential adverse impact. Since the board of supervisors is a legislative body, precise standards to govern its determination are not required.

The plaintiffs' next contention is that since the impact of a special use is like the impact of a variation, the statutory requirement that written findings of fact must accompany a variation should be applied to special uses. They also assert, again by analogy to variations, that if the zoning board of appeals rejects a special use, a three-fourths majority of the county board of supervisors should be required to grant the permit. In the present case no finding of facts was adopted by the county board. The special use permit was granted without a three-fourths vote of the county board, although the board of zoning appeals had rejected the club's application, and had found specifically that the proposed use would be incompatible with the general character of the neighborhood and its trend of development, would cause considerable depreciation of surrounding property, and would increase traffic congestion.

We recognize that because the special use may have the same impact upon neighboring property as a variation, procedural safeguards similar to those prescribed for variations might be desirable for special uses as well. But the enabling act imposes these safeguards only as to variations, and the two techniques are not identical. The scope of the special use, and its purpose, differ from those of the varia-

tion, which is designed to handle cases of practical difficulty or particular hardship to property owners created by zoning restrictions. For this court to impose upon the local legislative body, in dealing with special uses, the procedures required for variations would be to move from interpretation of the act to policy determination and implementation. This is the function not of the court, but of the General Assembly.

Furthermore, the impact of a special use may resemble that of an amendment as well as a variation. Yet the statutory procedures for amendments vary greatly from those for variations. A three-fourths vote of the county board is required if 20% of the adjacent landowners object, but no findings of fact are required since an amendment is considered a legislative act. By analogy to the plaintiffs' contention in this case, it may be argued that amendment procedures, rather than variation procedures, should be required when granting a special use permit. Which, if either, of the statutory procedures is appropriate for the new special use technique that has developed under the statute is a matter for legislative determination.

It is true that in *Rosenfeld v. Zoning Board of Appeals,* 19 Ill. App. 2d 447, the Appellate Court set aside a special use permit in part for lack of written findings of fact, although it recognized that findings were not required by the zoning ordinance or the enabling act. In that case, however, the special use was granted by the zoning board of appeals of Chicago and review was under the Illinois Administrative Review Act. (Ill. Rev. Stat. 1959, chap. 110, pars. 264-279.) Review under that act is on the record made in the administrative agency and its findings of fact are to be held *prima facie* true and correct. (Ill. Rev. Stat. 1959, chap. 110, par. 274.) Orderly and efficient review procedure under the act may, therefore, require that the administrative agency make written findings. The same reasoning does not apply in the present case where the

special use permit was granted by a legislative body and judicial review is had in an independent action on a new record made in court.

The plaintiffs contend, finally, that to allow the club to conduct its proposed activities under a special use permit will deprive them of their property without due process of law. They argue that the damage to their property far outweighs any public benefit the club may produce. Although an expert witness for the plaintiff testified that operation of the club would substantially depreciate the value of surrounding property, two witnesses for the defendants took the opposite view. The county board imposed several restrictions designed to protect nearby houses from excessive light and noise. We think the record shows that the county board's action was not arbitrary and did not deprive the plaintiffs of their property without due process of law.

The judgment is affirmed.

*Judgment affirmed.*

Mr. CHIEF JUSTICE HOUSE, dissenting:

The county has only the powers delegated to it, expressly or by necessary implication. There is no specific authority granted by the county zoning enabling act for special use procedure, nor, in my opinion, can the device be justified under the general power to "regulate," "restrict" and "prohibit." How can it be said that a legislative intent was manifested to permit special use procedure when, as the majority opinion recognizes, such procedure was unknown at the date of enactment of the enabling legislation? The fact that statutory restrictions and standards are set up for amendments and variations indicates a legislative intent to the exact contrary.

I agree with the majority that it is a matter for legislative determination whether amendment, variation or other procedure is appropriate for the new special use technique.

But, that determination must come from the legislature together with suitable standards fixed for application of the procedure. It should not, as here, be left without restriction to the whim of the local governing body.

In one breath the majority opinion admits that unlimited application of the special use technique would take away the guarantee to property owners which is the very vitals of zoning and in the next approves special use procedure because its unlimited application "is not required." The ingenuity of members of our profession could conceivably conjure up so many "unique" situations which would require applications of special use procedures that *ad hoc* determination could become the rule rather than the exception.

The *Bell Telephone case* (402 Ill. 617) is readily distinguishable. First, the ordinances involved are entirely different and, second, the special use device was not in question, but the issue was whether area and height restrictions in the volume district were applicable.

From the standpoint of zoning enthusiasts and administrators the special use device provides a flexible method disposing of troublesome "unique" situations. On the other hand, its use in such cases as here (recreation center) is the further limiting of the rights of ownership of property under the guise of the much tortured and misused police power.