International Harvester Company, a Corporation, Aero Mayflower Transit Company, Inc., a Corporation, Columbia Tool Steel Company, a Corporation, Plaintiffs-Appellants, v. Zoning Board of Appeals of the City of Chicago, Illinois, Kedzie Iron & Metal Company, Inc., a Corporation, Direct Steel Service Corp., a Corporation, Continental Illinois National Bank and Trust Co., a Corporation, Security Alloys Co., a Corporation, Indiana Harbor Belt Railroad Co., a Corporation, United States Steel Supply Co., a Corporation, Douglas Food Corp., a Corporation, Martin Senour Co., a Corporation, Grand Trunk Western Railroad Co., a Corporation, Central Manufacturing District Trust, W. Wood Prince, et al., Trustees, West Chemical Products, Inc., a Corporation, National Can Corp., a Corporation, United States Post Office Department, Defendants-Appellees.

Gen. No. 48,759.

First District, Third Division.
September 18, 1963.

Stevenson, Conaghan, Hackbert, Rooks and Pitts, all of Chicago (Erwin E. Schultze and W. Gerald Thursby, of counsel), for appellants.

Schuyler, Stough and Morris, of Chicago (Daniel M. Schuyler and Edgar D. Ballard, Jr., of counsel), for appellee, Kedzie Iron & Metal Company, Inc., and John C. Melaniphy, Corporation Counsel, of Chicago (Sydney R. Drebin and Robert J. Collins, Assistant Corporation Counsel, of counsel), for appellee, Zoning Board of Appeals.

MR. JUSTICE DEMPSEY delivered the opinion of the court.

One of the defendants, the Kedzie Iron & Metal Company, Inc., filed an application for a special use permit with the Zoning Board of Appeals of the City of Chicago. Its application was approved. Three objectors (the plaintiffs-appellants) brought an administrative review action seeking to reverse the decision of the zoning board. The Superior Court affirmed the decision and the objectors have appealed.

The property in question has been used as a coalyard since 1927. It is located on the west side of the street at 4844–56 South Kedzie Avenue, Chicago, in the midst of a district zoned for general manufacturing. It is irregular in shape and is bounded by Kedzie Avenue

on the east, by a bank of elevated railroad tracks on the south, by a spur railroad track on the west and by a building, in which food is processed, on the north. There is a brick fence on the Kedzie Avenue side which prevents a person on the sidewalk from seeing in. The testimony was that the applicant intended to build fences at least 8 feet high on the other sides and would remove from the premises six coal silos, each 55 feet high and 20 feet in diameter. ·

The application stated that the property was to be used,

> ". . . for the purposes of buying, selling at retail or wholesale and trading in, bartering, and exchanging new and used metals, scrap iron, scrap metals, wrecking and demolishing personal property for the purposes of salvaging all iron, metals and kindred articles therein contained, and to do any and all acts necessary and proper appertaining to the conduct of a metal salvage and material yard."

A special use of the type requested is permissible in a general manufacturing district (M2–3) if the Zoning Board of Appeals decides that the application meets the standards prescribed by the City's ordinance. Municipal Code of Chicago, c 194A, §§ 11.10–2, 11.10–4, 10.4, 10.4–2.

The pertinent portions of the zoning ordinance and the required standards are these:

> "Sec 11.10–1 Purpose. The development and execution of a comprehensive zoning ordinance is based upon the division of the City into districts within which districts the use of land and buildings and the bulk and location of buildings and structures in relation to the land are substantially uniform. It is recognized, however, that there are variations in the nature of special uses which, because of their unique characteristics, cannot be

properly classified in any particular district or districts, without consideration in each case, of the impact of those uses upon neighboring land and of the public need for the particular use at the particular location. Such variations in the nature of special uses fall into two categories:

"(1) Uses either municipally operated, or operated by publicly regulated utilities or uses traditionally affected with a public interest; and

"(2) Uses entirely private in character but of such an unusual nature that their operations may give rise to unique problems with respect to their impact upon neighboring property or public facilities.

"Sec 11.10–2 Authorization. Variations in the nature of special uses may be authorized by the Zoning Board of Appeals. . . ."

"Sec 11.10–4 Standards. No special use shall be granted by the Zoning Board of Appeals unless the special use:

"(1) a. Is necessary for the public convenience at that location;
b. Is so designed, located and proposed to be operated that the public health, safety and welfare will be protected; and

"(2) Will not cause substantial injury to the value of other property in the neighborhood in which it is to be located; and

"(3) It is within the provisions of 'Special Uses' as set forth in rectangular boxes appearing in Articles 7, 8, 9, and 10; and

"(4) Such special use shall conform to the applicable regulations of the district in which it is to be located."

The "applicable regulations of the district," [(4) above] refer in this instance to the performance stand-

443

ards established for an M2–3 general manufacturing district. These standards concern noise, vibration, smoke, glare, heat, fire hazards, explosive hazards, and toxic, particulate and odorous matters. Chapter 194A, secs 10.5 to 10.11–2, Municipal Code.

As to subsections (1), (2) and (3), it is the contention of the plaintiffs that the zoning board made insufficient findings of fact and that the evidence did not support the findings which were made; as to subsection (4), it is the contention that the applicant should have presented proof of intended compliance, but did not, and that the board should have made findings of fact, but did not.

Although we are of the opinion that there is no evidence to support the finding of the Board of Appeals that the special use was "necessary for the public convenience at that location," as required in subsection (1)(a), and although we believe that the applicant's evidence was insufficient to justify the finding that the special use would not cause "substantial injury to the value of other property in the neighborhood," and the case must be reversed for these reasons alone, we will, nevertheless, consider the important underlying issues presented by this appeal: (1) whether in cases of special use the Zoning Board of Appeals must make findings of fact and (2) whether the applicant for a special use permit must show that the proposed special use will conform with the performance standards set forth in the ordinance for the district in which the special use is to be located. The first issue has been before this court in one other case (Rosenfeld v. Zoning Board of Appeals of City of Chicago, 19 Ill App2d 447, 154 NE2d 323); the second has never been presented and is said by the plaintiffs to be a case of first impression not only in Illinois but in the United States.

The special use is a zoning device of comparatively recent origin which is being employed with increasing

frequency. Where it is authorized by zoning ordinances, the device enables the zoning authorities to place into a zoned district, in addition to the uses permitted in that district, certain others designated as special uses. The device has been called "an effective method of dealing with a narrow but difficult problem of land use control." (Kotrich v. County of Du Page, 19 Ill2d 181, 166 NE2d 601) and, on the other hand, it is said to afford—under certain conditions—an "obvious opportunity . . . for special privilege, for the granting of favors to political friends or financial benefactors, for the withholding of permits from those not in the good graces of the authorities, and so on." (Special concurring opinion, Ward v. Village of Skokie, 26 Ill2d 415, 186 NE2d 529.)

No statute approving the special use procedure has been enacted by the Illinois legislature but its validity has been upheld as a means of implementing the zoning powers conferred by statute. Kotrich v. County of Du Page, supra. Since the legislature has not directly authorized the procedure, there is no statutory requirement that the granting of a permit for a special use ". . . shall be accompanied by findings of fact specifying the reason or reasons . . ." such as there is for zoning variations. (Ill Rev Stats, c 24, § 11–13–11 (1961).) The City ordinance which we are considering is also silent as to findings of fact for special use, but such findings must be made to support the granting of variations. Chapter 194A, sec 11.7–1 provides:

"11.7–1 Purpose. The Board of Appeals shall determine and vary the regulations of this comprehensive amendment in harmony with their general purpose and intent, only in the specific instances hereinafter set forth, where the Board *makes a finding of fact based upon the standards hereinafter prescribed,* that there are practical difficulties or particular hardships in the way of

445

carrying out the strict letter of the regulations of this comprehensive amendment."

The same is true of section 11.7–3 which lays down the standards for variations. This section provides:

"11.7–3 Standards for Variations. The Board of Appeals shall not vary the regulations of this comprehensive amendment, as authorized in Section 11.7–4 hereof *unless it shall make findings* based upon the evidence presented to it in each specific case that: . . . ."

It is the plaintiffs' position that there is no essential difference between a variation and a special use, and, since the ordinance requires that findings must be made to support the grant of a variation, the same requirement should be engrafted on the grant of a special use.

There is a difference between a variation and a special use and the difference was noted in the Rosenfeld case, 19 Ill App2d 447, 154 NE2d 323:

"It differs from a 'variance' in that a 'special use' is a permission by the Board to an owner to use his property in a manner contrary to the ordinance provided that the intended use is one of those specifically listed in the ordinance and provided that the public convenience will be served by the use, while a variance is a grant of relief to an owner from the literal requirements of the ordinance where literal enforcement would cause him undue hardship. Yokley, Zoning Law and Practice, Sec 134."

The same distinction was recognized in Kotrich v. County of Du Page, supra. (See also, Yokley, Zoning Law and Practice, 2nd Ed, sec 133, p 324; and Metzenbaum, Law of Zoning, 2nd Ed, ch IX–f–2(b), p 813.)

Nevertheless, the ordinance (section 11.10–2) speaks of special uses as "Variations in the nature of special uses" and states (in section 11.10–3):

> "An application for a variation in the nature of a special use shall be filed and processed in the manner prescribed for applications for other variations and shall be in such form and accompanied by such information as shall be established from time to time by the Zoning Board of Appeals."

This language may indicate a legislative intent to equate special uses with variations.

In addition to the language of the ordinance, we must take into consideration the factor that the Administrative Review Act, Ill Rev Stats, c 110, § 274 (1961), under which appeals are taken from the decisions of the Board of Zoning Appeals, provides: "The findings and conclusions of the administrative agency on questions of fact shall be held to be prima facie true and correct."

The Rosenfeld case, supra, was a case under the Administrative Review Act and the appeal was from a decision of the Chicago Zoning Board of Appeals which made no findings of fact. This court stated:

> "We agree with plaintiffs that if the Board must make findings of fact specifying the reasons for granting a variation, Chap 24, sec 73–4(g) Ill Rev Stat (1955), it ought to make findings of fact as a basis for granting a 'special use.' It is true neither the statute nor the ordinance requires this, but fairness and orderly review procedure does."

The above statement from the Rosenfeld case was given sanction in Kotrich v. County of Du Page, supra. The Kotrich case was a declaratory judgment proceeding which involved the validity of a special use permit granted by the defendant, the Board of Supervisors of Du Page County. After sustaining the statutory authority of the county to provide for special uses, the

447

court proceeded to plaintiffs' contention that since the impact of a special use is like that of a variation, the statutory requirement that written findings of fact must accompany a variation should be applied to special uses. The court rejected this contention. However, the court limited its holding by clearly pointing out that the special use permit before the court was granted by a legislative body, and that the judicial review was sought in an independent action on a new record made in court. The court did not extend its holding to a review brought under the Illinois Administrative Review Act. The court commented on the Rosenfeld case as follows:

"It is true that in Rosenfeld v. Zoning Board of Appeals, 19 Ill App2d 447, the Appellate Court set aside a special use permit in part for lack of written findings of fact, although it recognized that findings were not required by the zoning ordinance or the enabling act. In that case, however, the special use was granted by the zoning board of appeals of Chicago and review was under the Illinois Administrative Review Act. (Ill Rev Stats 1959, c 110, §§ 264–279.) Review under that act is on the record made in the administrative agency and its findings of fact are to be held prima facie true and correct. (Ill Rev Stats 1959, c 110, § 274.) Orderly and efficient review procedure under the act may, therefore, require that the administrative agency make written findings. The same reasoning does not apply in the present case where the special use permit was granted by a legislative body and judicial review is had in an independent action on a new record made in court."

In Maywood Park Trotting Ass'n v. Racing Commission, 15 Ill2d 559, 155 NE2d 626, the court made this

448

comment about findings under the Administrative Review Act:

> "Generally, the requirements with respect to administrative findings are more exacting than those relating to the findings of trial courts. Judicial recognition of the practical reasons for requiring administrative findings is almost universal. Administrative Law Treatise, Davis, vol 2, sec 16.01, p 435."

The author cited by the court, in section 16.05 of his treatise, gives the reasons why courts judicially impose the requirement of findings of fact:

> "The practical reasons for requiring administrative findings are so powerful that the requirement has been imposed with remarkable uniformity by virtually all federal and state courts, irrespective of a statutory requirement. The reasons have to do with facilitating judicial review, avoiding judicial usurpation of administrative functions, assuring more careful administrative consideration, helping parties plan their cases for rehearings and judicial review, and keeping agencies within their jurisdiction." Davis, Administrative Law Treatise, vol 2, chapter 16, sec 16.05.

 Because of the language of the ordinance, because findings of fact are needed to enable a reviewing court to properly fulfill its function under the purpose and policy of the Administrative Review Act, and because of the decision in the Rosenfeld case and the partial approval given that decision by the Supreme Court in the Kotrich case, we conclude, even though the ordinance does not directly require the Zoning Board of Appeals to make specific findings of fact, that these should be made when an application for a special use is granted.

We turn now to the issue of whether an application for a special use must show that the proposed use will meet the performance standards required by the ordinance for the district in which the special use is to be located. When the present application was submitted to the Commissioner of City Planning (pursuant to sec 11.10–2) the Commissioner recommended:

"That the application to locate and establish a junk yard in an M2–3 General Manufacturing District, on premises at 4844–56 S. Kedzie Avenue, be granted provided all regulations of the zoning ordinance can be met, especially those pertaining to performance standards."

The zoning board, however, made no finding in reference to these standards—in fact its decision did not mention them at all and the comments of the chairman, during the course of the hearing, suggest that the board did not consider them as being conditions precedent to the granting of a special use permit.

The performance standards are intricate and confusing and proof of intended compliance would obviously be difficult; nevertheless, a careful study of the ordinance leads to the ineluctable conclusion that these standards were meant to be conditions precedent as well as subsequent. They are conditions precedent in that there must be a satisfactory showing by the applicant that the proposed use will conform with these standards before the permit is granted. They are conditions subsequent in that the use, if granted, must continue to observe these standards and the applicant may be penalized if violations occur.

We are of the opinion that findings of fact must be made in cases of special use; that in the present case no findings were made in reference to the performance standards; that the findings which were made in reference to the other standards were too general and

just repeated verbatim the language of section 11.10–4 of the ordinance, and in one or two instances the findings were not supported by substantial evidence.

The order of the Superior Court must, therefore, be reversed.

Reversed.

SCHWARTZ, PJ and McCORMICK, J, concur.