Leonard W. Kosoglad, Bernice Kosoglad, His Wife, IPEC, Incorporated, a Corporation, Forsyth Manufacturing Co., a Corporation, Accurate Steel Treating Company, a Corporation, L. Richard & Co., Inc., a Corporation, Capitol Hardware Mfg. Co., Inc., a Corporation, Oak Park National Bank, a National Banking Association as Trustee Under the Provisions of a Trust Agreement Dated June 11, 1958, and known as Trust Number 4454, The Merit Company, a Corporation, and Superior Plastics, Inc., a Corporation, Plaintiffs-Appellants, v. Zoning Board of Appeals of the City of Chicago, B. Emmett Hartnett, Chairman of the Zoning Board of Appeals, C. Logan McEwen, et al., Members of the Zoning Board of Appeals, and Stanley Lempa, Defendants-Appellees.

Gen. No. 49,349.

First District, Fourth Division.

March 18, 1964.

Hoffman & Davis, of Chicago, for appellants.

John C. Melaniphy, Corporation Counsel, of Chicago (Sydney R. Drebin and Marvin E. Aspen, Assistant Corporation Counsel, of counsel), for appellees, Zoning Board of Appeals, Chairman of the Board, and Members of the Board. Paul Peter Black, of Chicago, for appellee, Lempa.

MR. JUSTICE DRUCKER delivered the opinion of the court:

This is an appeal from a judgment, on administrative review, affirming the action of the Zoning Board of Appeals of the City of Chicago in granting a special use permit for the construction of a woodburning incinerator.

One of the appellees, Stanley Lempa, applied to the Zoning Administrator, Department of Buildings, for a permit to erect a woodburning incinerator at 2133–2151 West Hubbard Street. The application was not approved. Lempa thereafter filed with the Zoning Board of Appeals an application for the approval of a variation in the nature of a special use to permit the erection of the incinerator. Official notice was sent to the Commissioner of City Planning and thirty adjoining property owners.

The day before the hearing, the Commissioner of City Planning * advised the Appeals Board that the application "be deferred until such time as studies have been completed by the departments mentioned in the above statement." Although section 11.10–2 of the Chicago Zoning Ordinance (Municipal Code of Chicago, c 194A) provides in part that ". . . no application for variation in the nature of special use shall be acted upon by the Zoning Board of Appeals until after . . . a written report is prepared and filed with the Board by the Commissioner of City Planning, which

---

* Section 11.4–1 of the Chicago Zoning Ordinance provides in part that:

"The Commissioner of City Planning shall have the following duties under this comprehensive amendment: . . .

"(2) To receive from the Zoning Board of Appeals all applications for variations in the nature of a special use, to make an investigation relative thereto and to make recommendations thereon and forward such recommendations to the Zoning Board of Appeals through the Zoning Administrator."

217

report shall become a part of the record," the Board held its hearing as scheduled.

Thirteen adjoining owners wrote letters of objection in response to the Board's notice * and seven other objectors were represented by their attorneys at the hearing.

However, appellants rely principally on two grounds for reversal: (1) that the evidence submitted by Lempa and his architect did not demonstrate that the proposed use would meet the required standards of the ordinance and (2) that the order of the Board of Appeals approving Lempa's application did not contain any specific findings concerning required standards.

At the hearing before the Board at which twenty or twenty-one neighbors appeared, the testimony of Lempa brought out that he had owned the property on Hubbard Street for almost a year; that he operated a wrecking company which was located a block and one-half from the proposed site and which was in the business of demolishing buildings; and that he needed the incinerator to dispose of the wood derived from wreckage because the wood would otherwise be burned in open fires. Lempa's architect testified that he had never before designed an incinerator; that the structure was about one-third built without any permit for such construction; that it was experimental; and that "we don't know whether it will work."

Lempa did not nor did any witness for him testify to conditions relating to the standards set out in section 11.10–4 of the ordinance or to performance standards, e.g., noise, vibration, noxious odors, fire hazards, explosive hazards, glare, heat or toxic matters. Therefore the Board was given no basis for a finding that the proposed special use was in compliance

---

* The notice read in part: "If it is inconvenient to appear at the hearing, file your objection by letter . . ."

218

with the required standards or conformed to the applicable regulations of the district in which it was to be located.

The order of the Board approving the application was couched in the general language of the ordinance and therefore cannot stand under the very recent case of International Harvester Co. v. Zoning Board of Appeals, 43 Ill App2d, 440, 193 NE2d 856.* In quoting from that case we are also entering our own conclusions in this case:

> "We are of the opinion that findings of fact must be made in cases of special use; that in the present case no findings were made in reference to the performance standards; that the findings which were made in reference to the other standards were too general and just repeated verbatim the language of section 11.10–4 of the ordinance . . . ".

The judgment of the Circuit Court of Cook County is reversed.

Reversed.

ENGLISH, P. J. and McCORMICK, J., concur.

---

* In that case, the special use was salvaging metal. "Junk yards" can be a special use in an M2 district whereas "incinerators" are not listed as a possible special use in an M2 district. The word "incinerator" does appear in Section 10.4–3 as "Incinerators, Municipal" as a special use in M3 Heavy Manufacturing Districts.

In the International Harvester case the Commissioner of City Planning had recommended the use. In both cases the property was classified as M2 General Manufacturing District.