PARKVIEW COLONIAL MANOR INVESTMENT CORPORATION, Plaintiff-Appellee, v. BOARD OF ZONING APPEALS OF THE CITY OF O'FALLON, Defendant-Appellant.—(DAVID DANIELS et al., Intervening Defendants-Appellants.)

Fifth District    No. 78-240

Opinion filed March 22, 1979.

Timothy P. Fleming, of O'Fallon, for appellant Board of Zoning Appeals of the City of O'Fallon.

Harry J. Sterling, of Sterling & Reed, of Fairview Heights, for appellants David Daniels *et al.*

Churchill, Nester & McDonnell, of Belleville (Joseph B. McDonnell, of counsel), for appellee.

Mr. PRESIDING JUSTICE GEORGE J. MORAN delivered the opinion of the court:

Defendant, Board of Zoning Appeals of the City of O'Fallon, Illinois (Board), and intervening defendants David and Genevieve Daniels *et al.* appeal from an order of the circuit court of St. Clair County requiring the Board to issue a special use permit to the plaintiff, Parkview Colonial Manor Investment Corporation.

The critical question in this case is—did the trial court err in holding that the zoning ordinances of the City of O'Fallon, Illinois do not

expressly prohibit the construction of a planned multi-family residential development in an SR-1 single-family residential district?

On August 15, 1977, plaintiff petitioned for a special use exception/planned building development permit from the city of O'Fallon. Plaintiff planned to erect two 75-unit three-story apartment buildings on a parcel of land which was zoned SR-1 (single-family residential).

The petition was submitted to the city planning commission. The commission issued an advisory opinion recommending that the special use permit be granted, provided plaintiff comply with certain off-street parking requirements.

The Board conducted a hearing on plaintiff's petition on September 22, 1977, and subsequently denied the special use permit. Plaintiff filed a second petition for a special use permit on September 30, 1977. Plaintiff's petition was substantially the same as the original petition but it provided for additional off-street parking. The planning commission recommended approval of the second petition but the Board again denied the special use permit.

Plaintiff filed suit under the Administrative Review Act (Ill. Rev. Stat. 1977, ch. 110, par. 264 *et seq.*). On January 12, 1978, the circuit court entered a judgment ordering the Board to issue any permits necessary for plaintiff's proposed development. On February 6, 1978, David and Genevieve Daniels *et al.* intervened as defendants and filed a motion for the court to reconsider its order. The motion was denied.

Section 1.02 of the O'Fallon Illinois Municipal Zoning Code provides:

"IT IS THE PURPOSE OF THIS ORDINANCE:

(a) To promote and protect the public health, safety, morals, comfort and general welfare of the people;

(b) To divide the city into zones or districts restricting and regulating therein the location, erection, construction, reconstruction, alteration, and use of buildings, structures, and land for residence, business, manufacturing, and other specified uses;

(c) To protect the character and the stability of the residential, business and manufacturing areas within the City and to promote the orderly and beneficial development of such areas;

* * *

(h) To prohibit uses, buildings or structures incompatible with the character of development or intended uses within specified zoning districts;

* * *

(j) To limit congestion in the streets and protect the public health, safety, convenience, and general welfare by providing for the off-street parking of motor vehicles and the loading and unloading of commercial vehicles."

In accordance with the above purpose, section 2.01 of the Code divides the city into the following zoning districts:

"A Agricultural District
SR-1 One-Family Residence District
SR-2 One-Family Residence District
SR-3 One-Family Residence District
MR-1 Two-Three and Four-Family Residence District
MR-2 Multi-Family Residence District
MH-1 Mobile Home Dwelling District
    B-1 Community Business District
    B-2 General Business District
    I-1 Industrial District."

Section 2.05 provides:

"(a) To facilitate public understanding of this Ordinance and for the better administration and convenience of use thereof, the regulations designating permitted uses, permitted accessory uses, exceptions and special permits for each of the districts established by Section 2.01 hereof, are set forth in Use Schedule as Section 2.05(d) hereof. Such Use Schedule is intended and declared to be an integral part of this Ordinance and it may be amended in the same manner as any other part of this Ordinance.

(b) Each column refers to a specific district which lists the permitted uses, permitted accessory uses, exceptions, special permits, and supplementary regulation references, and are read vertically under a district column.

\* \* \*

(d) SCHEDULE: PERMITTED USES; ACCESSORY USES; EXCEPTIONS AND SPECIAL PERMITS. See Schedule 2.05(d)."

Section 2.05(d) consists of 10 columns. Each column sets out the permitted uses, accessory uses, exceptions and special permits allowed in each zoning district. The SR-1 single-family zoning district column lists only "differential land-neighborhood park developments" as a permitted special use in the SR-1 district. The differential land-neighborhood park development is not listed as a permitted special use in any other column of the section 2.05(d) schedule. The "MR-2 multi-family" zoning district column and the "B-1 community business" zoning district column lists "planned multi-family developments" as a permitted use in each of those two zoning districts. Planned multi-family developments are not listed as

a permitted use in any other columns in the section 2.05(d) schedule.

Section 5.08 provides:

> "Section 5.08 MULTI-FAMILY RESIDENTIAL DEVELOPMENTS
>
> The Board of Zoning Appeals may permit a planned multi-family residence development consisting of a multi-family dwelling or dwellings, in the MR-2 and B-1 zoning districts. The entire site for such development shall constitute a single lot and the development shall be subject to such applicable requirements of the district in which it is situated and to such other regulations applying to the uses and permitted in the development as the Board deems necessary to comply with the intent and purpose of this Ordinance and to insure compatibility of the development with the character of its locality."

The Illinois Supreme Court has defined a special use as:

> "[A] means of providing for infrequent types of land use which are necessary and desirable but which are potentially incompatible with uses usually allowed in residential, commercial and industrial zones. Such uses generally occupy a rather large tract of land. They can not be categorized in any given use zone without the danger of excluding beneficial uses or including dangerous ones." (*Kotrich v. The County of Du Page* (1960), 19 Ill. 2d 181, 184-85.)

It has been further stated that "a 'special use' is a permission by the Board to an owner to use his property in a manner contrary to the ordinance provided that the intended use is one of those specifically listed in the ordinance and provided that the public convenience will be served by the use, * * *." *Rosenfeld v. Zoning Board of Appeals of Chicago* (1958), 19 Ill. App. 2d 447, 450.

Where special exception uses are provided for, they have their genesis in the ordinance and the body to which the power of administering them is delegated, must look to the terms of the ordinance itself for the measure of its power. Rathkopf, The Law of Zoning and Planning, ch. 54, §1, at 54-59 (3d ed. 1965).

Since the SR-1 zoning column lists "differential land-neighborhood park development" as the only permitted special use in an SR-1 district, under normal rules of construction it is inferred that the city council intended to exclude all other special uses from the SR-1 district (*expressio unius est exclusio alterius*). Again, by the rules of statutory interpretation, the express mention of MR-2 and B-1 districts as permissible locations for planned multi-family residence developments infers that the city council intended to exclude such developments in all other zoning districts including the SR-1 districts.

In our opinion the Code obviously restricts planned multi-family

developments to MR-2 or B-1 districts. Defendant Board was correct in refusing to issue the special use permit sought by plaintiff.

■ Plaintiff contends that the Board could have issued the special use permit pursuant to section 7.04 of the Code. However, plaintiff quotes language from section 7.04 which pertains to variances, not special use permits; there is a distinction. A variance is a grant of relief to an owner from the literal requirements of the ordinance where literal enforcement would cause him undue hardship. A special use permit is a permission by the Board to another to use his property in a manner contrary to the ordinance provided that the extended use is one of those specifically listed in the ordinance. *Rosenfeld v. Zoning Board of Appeals* (1958), 19 Ill. App. 2d 447, 154 N.E.2d 323.

■ Plaintiff petitioned for a special use permit, not a variance. A party seeking a special use permit may not argue that he has satisfied the requirements for a variance. (*Audino v. Board of Appeals* (1966), 75 Ill. App. 2d 347, 221 N.E.2d 34.) Even were plaintiff seeking a variance, its petition would still be denied. Plaintiff has failed to show the "practical difficulty and/or unnecessary hardship as would deprive the owner of the reasonable use of his land." O'Fallon, Ill., Mun. Zoning Code §7.04.

The trial court clearly erred in finding that the Board had the power to authorize the special use permit. We find it unnecessary to consider other errors alleged in this appeal.

For the foregoing reasons, the judgment of the circuit court of St. Clair County is reversed.

Judgment reversed.

JONES and KUNCE, JJ., concur.