MELROSE PARK NATIONAL BANK, Trustee, Plaintiff-Appellant, *v.* THE ZONING BOARD OF APPEALS OF THE CITY OF CHICAGO *et al.*, Defendants-Appellees.

First District (1st Division)    No. 79-148

Opinion filed December 3, 1979.

Thomas W. McNamara and Jayne W. Barnard, both of Chicago (Jenner & Block, of counsel), for appellant.

Richard J. Matuga, of Lansing, for appellee The Village of Burnham.

Edward R. Vrdolyak, Ltd., of Chicago (Edward R. Vrdolyak and Michael P. Casey, of counsel), for other appellees.

Mr. JUSTICE O'CONNOR delivered the opinion of the court:

Plaintiff, Melrose Park National Bank, as trustee under trust agreement dated February 1, 1978, and known as Trust No. 2320 (Bank), sought a special-use permit to develop a sanitary landfill from defendant the Zoning Board of Appeals of the City of Chicago (Board), pursuant to the Municipal Code of Chicago (1977), ch. 194A, §§11.10—1 through 11.10—3 (Chicago Zoning Ordinance). The Board denied plaintiff's application because it did not receive three affirmative votes as required by Chicago Zoning Ordinance §11.7—4. The vote was 2 to 1 in favor. On administrative review, the circuit court of Cook County affirmed, and plaintiff appeals.

Plaintiff raises three contentions: (1) the circuit court erred in view of evidence supporting the granting of a special use permit; (2) despite voting against the Bank's proposal, the Board made findings of fact in favor of the permit; these findings were binding on the circuit court; and (3) denial of plaintiff's permit for lack of one single affirmative vote was arbitrary, capricious and constituted a denial of due process.

This controversy concerns property held by the Bank as trustee zoned M3-3 and M3-2 heavy manufacturing. The property is located in Chicago and is bounded by Torrence Avenue on the east, 130th Street on the north, and the Calumet River on the west. The property is contiguous on its eastern border to a residential neighborhood of about 14,000 people, on its north to a heavy industry development zoned M3-3, and on its west and south to vacant land zoned M3-3.

Plaintiff sought to use the land from Torrence Avenue westward 350 feet for industrial development and parking. No special-use permit is required for this part of the proposal. Westward, the land would be used for a sanitary landfill and sand rmoval. The westernmost end of the property would be used for a metal recycling facility. These proposed developments require special-use permits.

On April 21, 1978, the Board held a public hearing on the Bank's application. The commissioner of the Department of Planning, City and Community Development recommended the proposed use. Plaintiff also relied upon the supportive testimony of five experts: a consulting industrial engineer, a traffic engineer, an accoustical engineer, a zoning consultant and a real estate appraiser.

Residents of the Hegewisch community, located one-half mile from the site, submitted a petition and testified in opposition to the proposed use. The "Avalon Trails Improvement Association" and the Calumet Area Industrial Commission submitted written statements. Finally, counsel for the neighboring village of Burnham argued against the landfill proposal.

Following the hearing, the acting chairman of the Board

recommended that plaintiff's application be approved provided that the sanitary landfill and metal scrap yard only be operated from 6 a.m. to 8 p.m. Mondays through Saturdays, and with a termination date of April 21, 1981.

Thereafter, a resolution concerning plaintiff's application was written and presented to the Board for a vote. A portion of that resolution, as reported in the Board's official minutes, states:

"That the proposed use is to be located in M3-2 and M3-3 heavy manufacturing districts; that the proof presented indicated that the subject site is vacant and unimproved and consists of a site of approximately 100 acres; that the subject site is bounded on all sides by M3 zoned property with the Calumet River and land fill operations directly to the west of the site and a railroad directly to the north of the site; that the subject site in its present condition is not capable of development for a permitted use in its applied zoning classification of M3 heavy manufacturing; that the applicant proposes to utilize this site for a scrap metal yard, including the recycling of metals, in the area along the Calumet River, an industrial complex in the 350 foot strip along South Torrence Avenue, and a sanitary landfill for the deposit of organic and inorganic solid waste materials in the intervening area to serve both private scavengers and the City of Chicago; that the proposed use is subject to the approval of and regulation of the Department of Environmental Control of the City of Chicago and the Environmental Protection Agency of the State of Illinois, thus insuring that the proposed use will be so designed, located and proposed to be operated in a manner that the public health, safety and welfare will be protected; that the proposed use will not cause substantial injury to the value of other property in the neighborhood in which it is to be located in that the proposed development along Torrence Avenue is totally consistent with the land use and zoning pattern in the area, the sanitary landfill and the metal scrap yard are consistent with the land use and zoning in the area and do not introduce a type of use foreign to the area, that it will be essentially a land reclamation area which will lend itself to land development; that it will stabilize a large area of 100 acres in close proximity to a residential area and which is presently uncontrolled and subject to skip dumping."

The Bank alleges that this statement constitutes findings of fact. Two Board members concurred in the resolution, one member voted against it, one member was absent, and there was one vacancy on the five-member Board. Because the concurring vote of three Board members is required

to grant a special-use permit (Chicago Zoning Ordinance §11.7—4), plaintiff's application was denied.

■■ Plaintiff filed a complaint for administrative review in the circuit court. (Ill. Rev. Stat. 1977, ch. 110, par. 267.) In affirming the Board's determination, the court commented upon the "alleged findings" contained in the acting chairman's recommendation:

> "* * * I did consider the findings of fact contained in the order of the Commission [*sic*]. However, in light of the nature of the parties present, and the nature of the vote, I only gave it such weight as I felt it was entitled to by reason of the fact that there were only three members present to hear this matter."

Section 11—13—11 of the Municipal Code (Ill. Rev. Stat. 1977, ch. 24, par. 11—13—11), requires that:

> "Every variation or special use * * * shall be accompanied by findings of facts. * * * The findings of facts shall specify the reason or reasons for making the variation."

Although there is no specific legislative requirement that the Board make findings of fact in denying an application for a special use, we hold that such findings of fact are required and that the Board failed to make findings necessary to guide the circuit court on administrative review.

Findings of fact are generally necessary for all administrative agency final decisions. In *Reinhardt v. Board of Education* (1975), 61 Ill. 2d 101, 103-04, 329 N.E.2d 218 (a teacher discharge case), the court stated:

> "It is clear that a decision by an administrative agency must contain findings to make possible a judicial review of the agency's decision. The Supreme Court in *Securities and Exchange Com. v. Chenery Corp.*, 318 U.S. 80, 94, 87 L. Ed. 626, 63 S. Ct. 454, described the requirement stating that 'the orderly functioning of the process of review requires that the grounds upon which the administrative agency acted be clearly disclosed and adequately sustained.' See *Kotrich v. County of DuPage*, 19 Ill. 2d 181, 188; *Maywood Park Trotting Association v. Illinois Harness Racing Com.*, 15 Ill. 2d 559, 563; *International Harvester Co. v. Zoning Board of Appeals*, 43 Ill. App. 2d 440, 449; see also 2 Davis, Administrative Law Treatise, sec. 16.01."

In *International Harvester Co. v. Zoning Board of Appeals* (1963), 43 Ill. App. 2d 440, 193 N.E.2d 856, the court expressly held that findings of fact were required for granting a special use even though there was no explicit requirement under the applicable statute.

The issue of whether findings of fact are required where a change in classification is denied was addressed in *Vahle v. Zoning Board of Appeals* (1968), 97 Ill. App. 2d 165, 239 N.E.2d 865. That case involved a

requested change of petitioner's premises from one nonconforming use to another. The court found that the zoning board was required to make findings of fact in denying this petition, even though such findings were not required by statute or ordinance.

The rationale behind obligatory findings of fact stems from the Administrative Review Act. (Ill. Rev. Stat. 1977, ch. 110, par. 264 *et seq.*) The scope of administrative review pertains to all questions of law and fact presented by the record. However, the findings of the administrative agency on questions of fact are considered to be *prima facie* true and correct (Ill. Rev. Stat. 1977, ch. 110, par. 274), and may not be reversed unless they are against the manifest weight of the evidence (*Kreiser v. Police Board* (1976), 40 Ill. App. 3d 436, 352 N.E.2d 389, *aff'd* (1977), 69 Ill. 2d 27, 370 N.E.2d 511). Orderly and efficient review procedure under the Act commands that the administrative agency make written findings. *International Harvester; Rosenfeld v. Zoning Board of Appeals* (1958), 19 Ill. App. 2d 447, 154 N.E.2d 323; see also *Kotrich v. County of Du Page* (1960), 19 Ill. 2d 181, 166 N.E.2d 601, *appeal dismissed* (1960), 364 U.S. 475, 5 L. Ed. 2d 221, 81 S. Ct. 243.

In *Maywood Park Trotting Association v. Illinois Harness Racing Com.* (1959), 15 Ill. 2d 559, 563, 155 N.E.2d 626, the court said about findings under the Administrative Review Act:

> "* * * Generally, the requirements with respect to administrative findings are more exacting than those relating to the findings of trial courts. Judicial recognition of the practical reasons for requiring administrative findings is almost universal. Administrative Law Treatise, Davis, vol. 2, sec. 16.01, p. 435."

In *International Harvester*, the appellate court, after quoting the above passage, also quoted from the same author (43 Ill. App. 2d, 440, 449):

> " 'The practical reasons for requiring administrative findings are so powerful that the requirement has been imposed with remarkable uniformity by virtually all federal and state courts, irrespective of a statutory requirement. The reasons have to do with facilitating judicial review, avoiding judicial usurpation of administrative functions, assuring more careful administrative consideration, helping parties plan their cases for rehearings and judicial review, and keeping agencies within their jurisdiction.' Davis, Administrative Law Treatise, vol 2, chapter 16, sec 16.05."

Plaintiff contends that the Board made findings in its favor even though its special-use application was denied for failure to receive three affirmative votes. Plaintiff asserts that these findings (2 to 1 for approval) should have been deemed *prima facie* true and correct by the circuit court. Both parties rely on *Sokolis v. Zoning Board of Appeals* (1959), 21 Ill. App. 2d 178, 157 N.E.2d 427 (abstract).

In *Sokolis,* petitioner initially sought a variance from the zoning board of appeals. Six members of the seven-member board were present at the hearing. At the close of the evidence, three members voted "yes" and three members voted "no." Because the applicable statute required an affirmative vote of four board members to grant a variance, the application was denied. The zoning board also entered express written findings against the petitioner. The circuit court reversed and granted the variance, holding that four of the findings of fact by the board were erroneous. The appellate court held that "there can be no finding of fact by a board evenly divided 'for' and 'against' a proposition." The only decision the board could make was to deny the application for failure to gain four affirmative votes. Notwithstanding the absence of legally sufficient findings, the appellate court held it was necessary for it to examine the evidence to determine if the board's decision was contrary to the manifest weight of the evidence. The court reviewed the sufficiency of the evidence and held that the evidence was insufficient to sustain the trial court's findings as to two of the necessary elements under the statute (Ill. Rev. Stat. 1957, ch. 24, par. 73—4). It reversed the trial court and upheld the board's denial of the petition for variance.

■■ In the instant case, the Board was not evenly divided but divided two votes for granting the special use and one vote opposed. We disagree with plaintiff's assertion that the recommendation supported by two Board members constitutes findings of fact. To so hold would support the absurd proposition that a decision denying a special-use permit could be accompanied by findings in favor of granting the permit. Legislative enactments should be construed to give them a reasonable meaning and should not be interpreted to lead to absurd or unjust consequences. (*People ex rel. Carpentier v. Lange* (1956), 8 Ill. 2d 437, 134 N.E.2d 266; *People v. Bournes* (1977), 55 Ill. App. 3d 237, 370 N.E.2d 1230.) Administrative review of decisions with conflicting findings would prove hopelessly chaotic.

Additionally, we believe that the Board did not intend such an inconsistent result. Rather, we consider the alleged "findings" were merely part of a resolution by the acting chairman recommending that the special use be granted. When this resolution was not adopted for failure to achieve three affirmative votes, the "findings" were likewise defeated. Thus, in our view, the Board failed to make any findings. We decline to undertake an independent review of the sufficiency of the evidence as suggested by *Sokolis* for reasons stated above.

■ We interpret the legislative scheme so as to avoid the absurd result of findings inconsistent with an agency decision. No hearing can be conducted without a three-member quorum. (Ill. Rev. Stat. 1977, ch. 24, par. 11—13—3(C).) "The concurring vote of three members of the Board

of Appeals shall be necessary to grant a variation." (Chicago Zoning Ordinance §11.7—4.) In our opinion, the ordinance also contemplates a three-member majority vote to deny an application for a special use. Fairness to both parties requires no less.

Thus, when a three-member panel convenes, a unanimous vote is required to affirm or deny special-use applications. When the panel splits, the Board is compelled to seek the input of an absent member or members. This can be achieved without the burden of a rehearing through section 11—13—3(C) of the Municipal Code (Ill. Rev. Stat. 1977, ch. 24, par. 11—13—3(C)), which reads:

> "* * * No hearing shall be conducted without a quorum of the board being present, which shall consist of a majority of all the members. *Any absent member who certifies that he has read the transcript of the proceedings before the board may vote upon any question before the board."* (Emphasis added.)

The Board here was subject to this procedure by virtue of Chicago Zoning Ordinance §11.3—3:

> "* * * The Board shall keep minutes of its proceedings showing the vote of each member upon each question, or if absent or failing to vote, indicating such fact, * * *. The Board shall adopt its own rules of procedure *not in conflict* with this comprehensive amendment or *with the applicable Illinois statutes, * * *."*
> (Emphasis added.)

In this case, Chairman Jack Guthman was absent for reasons of illness and did not vote. There was one vacancy on the panel. At oral argument, counsel for the Board stated upon questioning that the Board's policy is to not have absent members vote and that Guthman, although requested to read the transcript and vote, declined so to do because of that policy. We find this "policy" repugnant to the purpose expressed by the above-quoted enactments.

Moreover, should a vacancy on the Board prohibit a majority determination, final action may be continued until that vacancy is filled. Section 11—13—3(C) of the Municipal Code (Ill. Rev. Stat. 1977, ch. 24, par. 11—13—3(C)) commands that vacancies on the Board *shall* be filled for the unexpired term of the vacant member. The Chicago Zoning Ordinance §11.3—1 further provides that vacancies *shall* be filled by appointment by the mayor of Chicago with the consent of the city council. The spirit of this legislation commands expedient appointments to allow litigants the benefit of full-panel participation. The appropriate procedures should be followed to insure a vote of three members either for or against the special use.

Because of the conclusion we have reached, it is unnecessary to consider the other contentions raised by plaintiff.

The order of the circuit court of Cook County is reversed and the cause remanded to the Board (see *Kreiser v. Police Board* (1977), 69 Ill. 2d 27, 31, 370 N.E.2d 511) for further proceedings not inconsistent with the views here expressed.

Reversed and remanded.

GOLDBERG, P. J., and McGLOON, J., concur.