VIRGILIN P. STENSON, Plaintiff-Appellant, *v.* WILLIAM J. STENSON, Defendant-Appellee.

First District (1st Division)    No. 63036

Opinion filed January 10, 1977.

Bernard Kaufman and Anthony Bruno, both of Chicago (John F. Martoccio, of counsel), for appellant.

John B. Hirsch, of Chicago, for appellee.

Mr. PRESIDING JUSTICE GOLDBERG delivered the opinion of the court:

Virgilin P. Stenson (plaintiff) brought action against her husband William J. Stenson (defendant) for separate maintenance and specific performance of their postnuptial agreement. The trial court entered a declaratory judgment that the agreement was invalid and unenforceable. Plaintiff appeals.

Plaintiff and defendant were married on May 13, 1948. They lived together as husband and wife, in apparent harmony, until summer of 1961. No children were born to them. Throughout this period, defendant was employed and plaintiff assumed responsibility for the household. Sometime during the summer of 1961, the parties ceased to have sexual relations. From that time on, they slept in separate rooms, but continued to live in the same apartment, with the wife performing her customary household duties. They continued to socialize together and maintained a joint bank account into which defendant deposited money. Plaintiff used the account to pay their bills and handled the bookkeeping.

On October 5, 1966, the parties entered into the agreement which is at issue here. It recited that they had agreed to settle "all property rights and differences between them;" and that "in the future it will be for the best interest of both that they live separate and apart from each other, * * *." The agreement provided that the husband would deposit his earnings in the parties' joint bank account and the plaintiff would use these funds to pay their living expenses; including "a home or apartment, which shall contain separate living quarters for each party * * *." Defendant released plaintiff from any claim for companionship or services, except for the maintenance of the household and he also relinquished any right of control over plaintiff. The parties agreed not to "molest or annoy" each other or to attempt to compel each other to resume conjugal relations. Each party agreed to refrain from instituting divorce or separation proceedings based on prior misconduct of the other. Each agreed to execute and keep in force a will providing that upon the death of either, all of his or her property would go to the survivor; with the exclusion of $5000 which could be bequeathed to strangers. Each party was also to be named executor of the other's will.

After the execution of this agreement, the parties continued to live together without any change. They occupied separate bedrooms in the same apartment. Plaintiff cooked, kept house and took care of

defendant's laundry. They entertained and went out socially together. Some seven months later they purchased a home in joint tenancy. They moved into this home and continued their life in the same manner.

Sometime in 1970 or 1971, defendant moved out of the home. He continued to deposit money in their joint bank account, although the amounts varied at times.

On November 5, 1973, plaintiff filed her complaint. Count I sought a judgment for separate maintenance and Count II prayed specific performance of the agreement. Defendant filed an answer to Count I and a motion to strike and dismiss Count II. Defendant also filed a counterclaim for divorce and the partition of the parties' home. In addition, he filed an amendment to his counterclaim, designated as Count III, for a declaratory judgment invalidating the postnuptial agreement.

The parties first proceeded to trial on the issue of validity of the agreement. After hearing all of the testimony and after submission of briefs, the trial judge filed a clear and concise memorandum opinion. On September 8, 1975, the trial court entered a declaratory judgment holding, in accordance with his opinion, that: "because the parties did not separate from one another for a substantial length of time after said agreement was entered into, said agreement was abrogated by the parties, and was rendered invalid and unenforceable by their failure to so separate."

Defendant died on September 11, 1976. Pursuant to motion and without objection, Raymond Shaheen, executor of the estate of William J. Stenson, deceased, was substituted as appellee. We note that as a result of defendant's death, the only portion of the agreement which remains in issue is that regarding the execution of mutual wills.

In this court plaintiff contends that the trial court erred in finding that the parties were not separated prior to the execution of the agreement since they had ceased cohabiting as husband and wife and their marriage relationship was dead; and that defendant is estopped to claim that the parties were living together at the time the agreement was executed and did not separate thereafter as he had abided by that agreement for over eight years. Defendant contends that the agreement is invalid because the parties did not separate before or upon execution thereof; the agreement is also invalid and unenforceable because it is vague and ambiguous, and because performance has become impossible; and finally, that the trial court properly found no estoppel against declaring the agreement invalid and unenforceable.

■■ The law in Illinois is clear that an agreement to separate at some future time is invalid. (*Lyons v. Schanbacher* (1925), 316 Ill. 569, 571, 147 N.E. 440.) The corollary to this principle is the general rule that "An agreement to separate at a future date while continuing to live as husband

and wife is invalid but one made in contemplation of immediate separation is not." (*In re Estate of Trecker* (1969), 107 Ill. App. 2d 94, 100, 246 N.E.2d 56, *leave to appeal denied*, 40 Ill. 2d 581.) The case most relied upon in this regard by plaintiff is *Henderson v. Henderson* (1937), 290 Ill. App. 448, 8 N.E.2d 545. A separation agreement there was held enforceable by this court not by virtue of any language in the agreement but because when the agreement was made "the husband and wife were living separate and apart." 290 Ill. App. 448, 460.

The issue in the case before us is not the language of the agreement itself but the conduct of these people at the time the agreement was executed and immediately thereafter. The record establishes that the parties continued to live together after the agreement was signed without the slightest change in their habits or relationship. Although their testimony may vary in unimportant details, they are virtually in agreement concerning their life together from the summer of 1961 to the date of the agreement and thereafter until defendant moved out of their home. This was a constant condition which continued without change during both periods of time. These two persons lived under the same roof. They had a division of labor with the husband working and paying expenses and the wife in charge of meals and the household. They had some degree of social and domestic life together except only for the absence of sexual relations. Their separate sleeping quarters under the same roof, fairly prevalent in today's society, did not alter the fact that they did not separate until the husband left their home.

■■ The phrase "separate and apart" is familiar legal language in Illinois. It appears in the statute upon which separate maintenance litigation is predicated (Ill. Rev. Stat. 1975, ch. 68, par. 22). In the early case of *Klemme v. Klemme* (1890), 37 Ill. App. 54, cited by plaintiff, in considering the statute then in effect, this court held that where a husband and wife lived in the same house and ate at the same table they were not living separate and apart even though they did not occupy the same sleeping quarters. (37 Ill. App. 54, 57.) Almost 60 years later this court adhered to that principle when it held that where husband and wife slept in separate rooms but in the same apartment they were not living separate and apart within the meaning of the statute on separate maintenance. (*Rafferty v. Rafferty* (1949), 337 Ill. App. 277, 85 N.E.2d 845.) It is correct, as plaintiff urges, that many of the cases cited in this regard deal with actions for separate maintenance under the statute. However, we see no compelling reason which would prevent us from considering these precedents in determining the exact meaning of the same phrase which appears in the contract before us and which is customarily used in so many postnuptial agreements. Whether or not the parties to this case were

living separate and apart when they signed the contract and at any given point before or after this event presented a question of fact for resolution by the trial judge. As shown, the only conflict in the evidence here pertains to unimportant details and as a general matter the testimony from both sides completely supports the conclusion reached by the trial court.

■■ We find that these parties were not living separate and apart when the agreement was signed and did not actually separate immediately thereafter. We conclude necessarily that the separation agreement was invalid and unenforceable. Consequently, we need not consider defendant's contention that the contract was invalid because it was vague and ambiguous.

Concerning plaintiff's argument on estoppel, defendant's response that the contract is illegal and against public policy, so as to preclude application of the theory, is due to a misplaced reliance on one aspect of *Lyons v. Schanbacher* (1925), 316 Ill. 569, 147 N.E. 440. That case is distinguishable from the case before us in that it involved an agreement which permanently relieved a husband of the obligation to support his wife. *Lyons* held that such a provision was void and against public policy and that this rendered the entire agreement void. (*Lyons*, 316 Ill. 569, 574.) However, *Lyons* was overruled or limited considerably by *Laleman v. Crombez* (1955), 6 Ill. 2d 194, 127 N.E.2d 489. Also, there is no similar provision regarding the defendant's legal duty to support included in the agreement here. Therefore neither *Lyons* nor *Laleman* is directly applicable. We cannot agree with defendant's contention that estoppel is an inappropriate defense for this reason. However, the problem remains as to whether the elements essential to the defense of estoppel are present here.

■■ Plaintiff contends that estoppel prevents defendant from raising the point that the parties were living together after the agreement was executed because defendant had abided by the agreement for over eight years. Equitable estoppel contemplates a change in position of one party induced by the statements or conduct of another, so that the person attempting to set up the estoppel has altered his position in such a way that he would be injured if the other person is not held to the representation on which the estoppel is predicated. (*Department of Public Works & Buildings v. Exchange National Bank* (1975), 31 Ill. App. 3d 88, 102, 334 N.E.2d 810, *leave to appeal denied,* 61 Ill. 2d 601.) To prevail on this theory, plaintiff must establish that she relied on defendant's representations or conduct and had no knowledge or convenient means of knowing otherwise. *Hickey v. Illinois Central R.R. Co.* (1966), 35 Ill. 2d 427, 220 N.E.2d 415, *cert. denied,* 386 U.S. 934, 17 L.

Ed. 2d 806, 87 S. Ct. 957; *Allstate Insurance Co. v. National Tea Co.* (1975), 25 Ill. App. 3d 449, 462, 323 N.E.2d 521, *leave to appeal denied,* 58 Ill. 2d 596.

There is, in the first place, no evidence that defendant made any representation to plaintiff upon which she acted. Defendant's continued performance of his obligations under the agreement, relied upon by plaintiff, cannot be deemed a material representation by implication. Plaintiff and defendant were, of course, equally well aware of their living arrangements. Furthermore, any question regarding the legal status of their mode of life would best have been answered by plaintiff's attorney rather than having been the subject of representation by either of these parties to the other.

■■ In addition, plaintiff must establish that, if she did rely on any representation by defendant, she changed her position to her detriment in reliance thereon. (See *Allstate,* 25 Ill. App. 3d 449, 461.) Again, the record fails to support this element of estoppel. These parties continued to live together after the agreement precisely as they had for some years past. Though plaintiff asserts that she suffered by her forbearance from divorcing defendant or making any claims against his property, there is no showing that this forbearance or any result thereof was to her detriment, as she continued to live in the manner to which she was accustomed. Plaintiff has failed affirmatively to sustain her burden of establishing the requisite elements of estoppel by "clear, precise and unequivocal" proof. (*City of Chicago v. Nielsen* (1976), 38 Ill. App. 3d 941, 947, 349 N.E.2d 532, and cases there cited.) The judgment appealed from is affirmed.

Judgment affirmed.

O'CONNOR and MEJDA, JJ., concur.