568 N.E.2d 1359 (1991)
210 Ill. App.3d 499
154 Ill.Dec. 910
CENTRAL TRANSPORT, INC., a Michigan corporation, Plaintiff-Appellee,
v.
VILLAGE OF HILLSIDE, an Illinois municipal corporation, Joseph Tamburino, as President, Russell F. Wajda, as Village Administrator, Village of Hillside, Defendants-Appellants.
No. 1-90-2158.
Appellate Court of Illinois, First District, Fourth Division.
March 7, 1991.
*1360 Burke & Burke, Ltd., Chicago (John M. Burke and Thomas M. Lake, of counsel), for defendants-appellants.
Earl L. Neal & Associates, and Daniel L. Houlihan & Associates, Chicago (Earl L. Neal and Richard F. Friedman, of counsel), for plaintiff-appellee.
Justice JOHNSON delivered the opinion of the court:
This matter comes before the court on appeal from the circuit court of Cook County. Defendants, the Village of Hillside (hereinafter the "Village"), Mr. Joseph Tamburino, and Mr. Russell F. Wajda appeal the grant of a writ of mandamus, and a final judgment order entered against them by the trial court. The initial action was brought in chancery by plaintiff, Central Transport, Inc. (hereinafter "Central Transport"), which sought to obtain a writ of mandamus requiring defendants to issue a permit for the construction of an addition to Central Transport's freight truck facility, located within the Village of Hillside, Illinois. Defendants pray that this court reverse the judgment of the trial court. In the alternative, defendants pray that this court reverse the aforementioned judgment and remand this cause to the trial court.
We affirm.

BACKGROUND
Central Transport is a licensed common carrier authorized by the Interstate Commerce Commission to transport goods. Central Transport is in the business of carrying goods by truck throughout the United States. Central Transport owns and operates several truck terminal facilities throughout this country. In the early 1970's, Central Transport owned and operated *1361 a truck terminal in the Village of Hodgkins, Illinois. In 1988, the Village of Hodgkins brought proceedings against Central Transport in an effort to condemn the land upon which Central Transport's trucking facility was located. Ultimately, the Village of Hodgkins acquired Central Transport's facility through eminent domain.
In response to the condemnation proceedings, Central Transport sought to acquire a new facility. In August 1989, Central Transport discovered that property located at 200 North Mannheim Road in Hillside, Illinois (hereinafter the "subject property"), was available for sale. The subject property was owned by Bellemead Development Corporation (hereinafter "Bellemead") and operated as a freight truck terminal.
The Village, a municipal corporation, adopted zoning ordinances in March 1955 and June 1964. The 1955 and 1964 zoning ordinances contained no provisions for special uses. "[A] `special use' is a permission by [a zoning authority] to [a property] owner to use his property in a manner contrary to the ordinance provided that the intended use is one of those specifically listed in the ordinance and provided that the public convenience will be served by the use, * * *." (Parkview Colonial Manor Investment Corp. v. Board of Zoning Appeals of the City of O'Fallon (1979), 70 Ill.App.3d 577, 581, 26 Ill.Dec. 876, 388 N.E.2d 877.) Pursuant to these ordinances, the property in question was designated "Zone A Industrial" in which a "motor truck freight terminal" was a permitted land use.
The current zoning law, Village of Hillside Zoning Ordinance No. 87-19 (hereinafter "the ordinance"), was adopted in 1980 after the Village Board of Trustees studied a report submitted to them by a planning expert. The ordinance was subsequently amended in 1987. Section 4.8 of the ordinance specifically permits use number 001 in districts zoned M-1. Use number 001 designates motor truck freight terminals as a permissible special use in districts zoned M-1 for office and industrial use. The subject property was given a zoning designation of M-1, approximately 10 years prior to Central Transport's purchase of the property, as well as a special use designation 001 that allowed the operation of a motor truck freight terminal. In 1980, the special use designation was adopted by the Village Board of Trustees without any application for a special use designation by Bellemead. Since the adoption of the current zoning ordinance, there were three additions to the facilities located on the subject property. Bellemead was given special zoning status by adding an asterisk to the zoning map. Bellemead was granted three permits to expand its motor truck freight terminal in 1984. Two of these permits allowed the construction of an additional office building, and the expansion of the existing office building. One permit was for the construction of additional docking space in the form of four new "overhead doors."
On November 16, 1989, Central Transport entered into a land sale contract with Bellemead for the purchase of the subject property and the existing structures on the property. The closing date was initially set for December of 1989. The closing for the purchase of the subject property occurred in March of 1990.
Prior to the execution of this contract, the parties had two informal meetings. The first meeting was held on November 16, 1989. This meeting was attended by the following persons: Mr. Joseph Tamburino, the Village president and president of the board of trustees of the Village (hereinafter the "Village Board"); Mr. Russell F. Wajda, the Village administrator and the chief operating officer of the municipality; Mr. Gerald Rauch, the director of acquisitions and development for Central Transport; Mr. John O'Connell, counsel for the Village of Hodgkins; and Ms. Phyllis Zucker, the real estate agent. At the meeting, Mr. Rauch gave a presentation illustrating Central Transport's proposed use of the subject property, which included a plan to install 109 additional trailer doors on the facility. Mr. Tamburino expressed reservations about this expansion proposal. However, no one cited zoning as an impediment to Central Transport's plans. At the close *1362 of the meeting, Mr. Tamburino stated that he would arrange a second meeting between the representatives of Central Transport and the Village Board.
The second meeting was held on December 5, 1989. At this meeting, Mr. Rauch made a presentation to Mr. Wajda and several members of the Village Board. Again, no zoning problems were cited as an impediment to Central Transport's plans.
Later that evening, members of the Village Board met with the Village administrator and expressed their opposition to Central Transport's plan. However, none of the Board members stated that Central Transport was required to apply for a new special use permit. Later, Mr. Wajda wrote a memorandum to the Village Board acknowledging that Mr. Tamburino directed him to reject Central Transport's plan.
On January 18, 1990, Mr. Wajda wrote a letter, on behalf of the Village, to Mr. Rauch rejecting Central Transport's proposal. The letter specified that the Village rejected the proposal based upon a "consensus of the Village Board" not to permit the expansion of the facility on the subject property, because the Board members desired to "see the area develop[ed] [for] office and retail use."
On March 1, 1990, Central Transport submitted an application for a permit to construct the proposed expansion along with blueprints for the project. In addition, Central Transport submitted blueprints for the proposed construction. In response to the permit application, Mr. Wajda directed a letter dated March 9, 1990, to Central Transport's attorney, Mr. Daniel Houlihan. The letter related that the Village Board would consider Central Transport's application only if it was filed in conjunction with an application for special use. Central Transport did not file a special use application.
Subsequently, Central Transport filed a complaint for mandamus on March 23, 1990, against the Village and Messrs. Tamburino and Wajda, in their official capacities. The complaint alleged that Central Transport's application for a construction permit complied with all of the applicable ordinances of the Village, and that Central Transport had a legal right to have the permit application processed by the Village.
The Village filed a motion to dismiss pursuant to section 2-619 of the Code of Civil Procedure (Ill.Rev.Stat.1989, ch. 110, par. 2-619). The Village argued that Central Transport failed to exhaust its administrative remedies because it did not appeal the Village's refusal to process its permit in compliance with the ordinance. On April 16, 1990, the trial court denied the Village's motion to dismiss.
In answer to Central Transport's complaint, the Village denied the allegations and set forth four affirmative defenses. The first affirmative defense alleged that Central Transport failed to exhaust its administrative remedies. The second affirmative defense alleged that the special use status conflicted with provisions of the ordinance and the Illinois Statute. (Ill.Rev. Stat.1989, ch. 24, pars. 11-13-1.1, 11-13-11.) The third affirmative defense alleged that Central Transport failed to demonstrate that the special use standards and conditions of section 11.7(4) of the ordinance were satisfied, and plaintiff, therefore, could not expand its use of the subject property. Finally, defendant asserted that the events which Central Transport alleges occurred prior to the Village's refusal to process Central Transport's zoning permit did not occur and, therefore, Messrs. Tamburino and Wajda could not process the Transport's permit.
In response to the Village's third affirmative defense, Central Transport contended that the Village was estopped from asserting the illegality of its zoning map and ordinance.
The court set a trial date of June 19, 1990. Prior to the trial, the Village stipulated that "[n]o special use permit containing performance standards or operational limitations for the subject property was ever enacted." Furthermore, defendants stipulated that "[n]o restrictions on the kinds or size of improvements have ever been promulgated with respect to special use 001 or the subject property, except those concerning special uses generally."
*1363 At trial, testimony was obtained from Mr. Rolf C. Campbell, Central Transport's zoning expert. Mr. Campbell testified that when an applicant needs special use zoning, he typically requests such zoning, and, if granted, such zoning would be spelled out in a special use permit, or a special use classification. However, Mr. Campbell further testified that if there was no provision in the zoning ordinance for special use restrictions or limitations, an applicant would not be required to seek a second special use permit if the applicant were to expand its existing use.
At the conclusion of all of the evidence, the trial judge issued an oral opinion. The trial judge found that the special use designation of the subject property was valid because the procedural requirements of the ordinance and the Municipal Code (Ill.Rev. Stat.1989, ch. 24, pars. 11-13-1.1, 11-13-11) were satisfied. In addition, the judge found that the Village was estopped from arguing the invalidity of the special use designation for the subject property. Finally, the trial judge found that the Village intended to allow expansion of the subject property as proposed by Central Transport. Judge Hall stated that she found for Central Transport for the following reasons:
"In the instant case * * * plaintiff[] [does] not seek to use the property in any manner which is different than that which is allowed by the published zoning, and [it] relied [up]on that zoning, which provides specifically for the plaintiff's proposed use of [the] property.
Finally, the court finds that the circumstances in this case would make it inequitable and not in the interest of justice to allow the Village to * * * revoke the long standing special use of this property."
On January 23, 1990, the trial judge entered a final judgment order in favor of Central Transport. The court also issued a writ of mandamus directing defendants to consider and process Central Transport's application for a building permit without requiring Central Transport to apply for or receive a special use permit. The writ also required defendants to complete review of the building permit on or before July 30, 1990, and to grant said permit if said permit met the requirements of the ordinance.
Thereafter, the Village made a motion to stay the final judgment order pursuant to Supreme Court Rule 305. (Ill.Rev.Stat. 1989, ch. 110A, par. 305.) On July 30, 1990, the trial court denied the Village's motion to stay and further mandated that Central Transport was permitted to expand its facility. The court also ruled that in the event its judgment was reversed, Central Transport shall be required to apply for a special use permit, and that in the event a permit is denied, Central Transport will have exhausted all of its judicial remedies. Finally, the court ruled that upon an order favoring the Village, Central Transport would be obligated to demolish the improvements constructed on the subject property.
The Village filed a notice of appeal on July 31, 1990, and this appeal followed. On appeal, the following issues are presented for review: (1) Whether the trial court's finding, that the procedural requirements of the ordinance and the Municipal Code (Ill.Rev.Stat.1989, ch. 24, pars. 11-13-1.1, 11-13-11) were satisfied when the subject property was granted special use status, was against the manifest weight of the evidence; (2) whether the trial court's application of the doctrine of estoppel was against the manifest weight of the evidence; and (3) whether the trial court erred when it found that plaintiff was not required to submit a special use application for its proposed expansion of the subject property.

OPINION

I.
Defendants contend that the trial court's finding, that the procedural requirements of the ordinance and the Illinois Statute were satisfied when the subject property was granted special use status, was against the manifest weight of the evidence. Defendants claim that the ordinance which designates the subject property as a special use allowing the operation of a motor truck freight terminal is invalid. *1364 Defendants claim that the designation occurred without an application by the property owner, a special use hearing before the zoning board of appeals, findings of fact before the zoning board of appeals, or the approval of a special use permit containing standards and limitations. Defendants rely upon sections 11-13-1.1 and 11-13-11 of the Municipal Code (Ill.Rev.Stat. 1989, ch. 24, pars. 11-13-1.1, 11-13-11), and sections 4.3 and 11.7 of the ordinance. Defendants also rely upon Treadway v. City of Rockford (1962), 24 Ill.2d 488, 182 N.E.2d 219, Chicago Association of Commerce & Industry v. Regional Transportation Authority (1981), 86 Ill.2d 179, 56 Ill.Dec. 73, 427 N.E.2d 153, International Harvester Co. v. Zoning Board of Appeals of the City of Chicago (1963), 43 Ill.App.2d 440, 193 N.E.2d 856, Pioneer Trust & Savings Bank v. Cook County (1977), 49 Ill. App.3d 630, 8 Ill.Dec. 527, 365 N.E.2d 913, rev'd on other grounds (1978), 71 Ill.2d 510, 17 Ill.Dec. 831, 377 N.E.2d 21, People ex rel. Siegal v. Griffin (1956), 9 Ill.App.2d 541, 133 N.E.2d 536, Kramer v. City of Chicago (1978), 58 Ill.App.3d 592, 16 Ill. Dec. 157, 374 N.E.2d 932, Geneva Residential Association, Ltd. v. City of Geneva (1979), 77 Ill.App.3d 744, 34 Ill.Dec. 177, 397 N.E.2d 849, Speck v. Zoning Board of Appeals of the City of Chicago (1980), 93 Ill.App.3d 460, 48 Ill.Dec. 898, 417 N.E.2d 630, and Landmarks Preservation Council of Illinois v. City of Chicago (1988), 125 Ill.2d 164, 125 Ill.Dec. 830, 531 N.E.2d 9.
Plaintiff maintains that the 1980 special use designation is valid. Plaintiff relies upon sections 11-13-1.1 and 11-13-11 of the Municipal Code (Ill.Rev.Stat.1989, ch. 24, pars. 11-13-1.1, 11-13-11), Illinois Gasoline Dealers Association v. City of Chicago (1988), 119 Ill.2d 391, 116 Ill.Dec. 555, 519 N.E.2d 447, Landmarks Preservation Council of Illinois v. City of Chicago (1988), 125 Ill.2d 164, 125 Ill.Dec. 830, 531 N.E.2d 9, Chicago & North Western Ry. Co. v. City of Des Plaines (1968), 97 Ill. App.2d 201, 240 N.E.2d 280, Chicago Title & Trust Co. v. City of Chicago (1970), 130 Ill.App.2d 45, 264 N.E.2d 730, and American National Bank & Trust Co. v. Arlington Heights (1983), 115 Ill.App.3d 342, 71 Ill.Dec. 210, 450 N.E.2d 898.
The Municipal Code has established the following pertinent procedural requirements for the enactment of special use ordinances:
"The corporate authorities of any municipality may in its ordinances * * * provide for the classification of special uses. * * * A special use shall be permitted only after a public hearing before some commission or committee designated by the corporate authorities * * *. A special use shall be permitted only upon evidence that such use meets standards established for such classification in the ordinances * * *." Ill.Rev.Stat.1989, ch. 24, par. 11-13-1.1.
Furthermore, the Municipal Code has the following procedural requirements for the variation of special uses:
"Every variation or special use, whether made by the board of appeals directly, or by an ordinance after a hearing before the board of appeals, shall be accompanied by findings of facts and shall refer to any exhibits containing plans and specifications for the proposed use or variation, which shall remain a part of the permanent records of the board of appeals. The findings of facts shall specify the reason or reasons for making the variation.
The terms of the relief granted shall be specifically set forth in a conclusion or statement separate from the findings of facts of the board of appeals or ordinance." Ill.Rev.Stat.1989, ch. 24, par. 11-13-11.
The Village has also established requirements for the enactment of special uses. Section 4.3 of the ordinance, entitled "Special Uses" makes the following relevant provisions:
"Special uses may be permitted in the various districts identified by symbol S in the appropriate column of the Schedule of Uses, provided a permit to establish such special use is obtained in accordance with the requirements of th[e] ordinance."
*1365 In addition, sections 11.7(3)(a) through 11.7(3)(d) of the ordinance set forth the following procedure for the processing of special use applications:
"11.7(3)(a) An application for a special use shall be filed with the zoning administrator and thereafter entered into the records of the next meeting of the zoning board of appeals.
11.7(3)(b) The zoning board of appeals shall fix a reasonable time, not to exceed 60 days, for the hearing of the request for special use permits and give due notice to the applicant and publish the same as required by law.
11.7(3)(c) The zoning board of appeals shall deliberate publicly upon the petition within 30 days from the date of the hearing. The zoning board of appeals may, upon notice, upon all interested parties, postpone all decisions for another 30 days but no longer.
11.7(3)(d) Findings and recommendations of the zoning board of appeals shall be submitted to the Village Board not later than 60 days following the public hearing."
Further, section 11.7(4) of the ordinance enumerates several standards which must be met before a special use permit may be issued. Essentially, an applicant must show that its proposed development meets all of these standards.
Now, we will turn our attention to the relevant provisions of the common law. Defendants ask us to reverse the trial court's issuance of the writ of mandamus because the trial court's finding that all procedural requirements were satisfied was against the manifest weight of the evidence. The writ of mandamus is an extraordinary remedy (Kramer v. City of Chicago (1978), 58 Ill.App.3d 592, 598, 16 Ill.Dec. 157, 374 N.E.2d 932; Pioneer Trust & Savings Bank v. County of Cook (1977), 49 Ill.App.3d 630, 639, 8 Ill.Dec. 527, 365 N.E.2d 913, rev'd on other grounds (1978), 71 Ill.2d 510, 17 Ill.Dec. 831, 377 N.E.2d 21.) The issuance of the writ of mandamus is within the sound discretion of the court. (Chicago Association of Commerce & Industry v. Regional Transportation Authority (1981), 86 Ill.2d 179, 185, 56 Ill.Dec. 73, 427 N.E.2d 153; Mid-America Television Co. v. Peoria Housing Authority (1981), 93 Ill.App.3d 314, 319, 48 Ill.Dec. 808, 417 N.E.2d 210; Kramer, 58 Ill.App.3d at 598-99, 16 Ill.Dec. 157, 374 N.E.2d 932.) A court's grant of a writ of mandamus shall not be reversed unless the grant is against the manifest weight of the evidence. People ex rel. Siegal v. Griffin (1956), 9 Ill.App.2d 541, 544, 133 N.E.2d 536.
In addition, the Illinois Supreme Court has stated that "[a] presumption exists in favor of the validity of a zoning ordinance * * *." (Bennett v. City of Chicago (1962), 24 Ill.2d 270, 273, 181 N.E.2d 96; see Chicago Title & Trust Co. v. City of Chicago (1970), 130 Ill.App.2d 45, 50, 264 N.E.2d 730; Chicago & North Western Ry. Co. v. City of Des Plaines (1968), 97 Ill. App.2d 201, 206, 240 N.E.2d 280.) This presumption may only be overcome by clear and convincing evidence that the zoning ordinance, as applied to the challenging party, is arbitrary, unreasonable, and bears no substantial relation to public health, safety, morals, or welfare. (Bennett, 24 Ill.2d at 273-274, 181 N.E.2d 96; see Chicago Title & Trust Co., 130 Ill.App.2d at 50, 264 N.E.2d 730; Chicago & North Western Ry. Co., 97 Ill.App.2d at 206, 240 N.E.2d 280.) The party challenging the validity of the ordinance bears the burden of proof. Bennett, 24 Ill.2d at 273-274, 181 N.E.2d 96; see Chicago & North Western Ry. Co., 97 Ill.App.2d at 206, 240 N.E.2d 280.
Furthermore, our supreme court has found that, as a general rule, courts may not adjudicate actions brought to overrule the decisions of a legislative body based upon that legislative entity's alleged failure to follow self-imposed requirements. Landmarks Preservation Council of Illinois v. City of Chicago (1988), 125 Ill.2d 164, 179, 125 Ill.Dec. 830, 531 N.E.2d 9; Illinois Gasoline Dealers Association v. City of Chicago (1988), 119 Ill.2d 391, 404, 116 Ill.Dec. 555, 519 N.E.2d 447; Chirikos v. Yellow Cab Co. (1980), 87 Ill.App.3d 569, 574, 43 Ill.Dec. 61, 410 N.E.2d 61.
*1366 Plaintiff correctly notes that this court has found that ambiguities in zoning ordinances are construed against the municipality. "Zoning ordinances are in derogation of the common law so that any ambiguity or uncertainty must be decided in favor of the property owner." (Lubershane v. Village of Glencoe (1978), 63 Ill. App.3d 874, 878, 20 Ill.Dec. 681, 380 N.E.2d 890; see American National Bank & Trust Co. v. Village of Arlington Heights (1983), 115 Ill.App.3d 342, 345, 71 Ill.Dec. 210, 450 N.E.2d 898; Oak Park Trust & Savings Bank v. Village of Elmwood Park (1969), 113 Ill.App.2d 121, 125, 251 N.E.2d 788.) However, it is unnecessary for us to employ this rule of construction because neither the Municipal Code nor the ordinance is ambiguous. See American National Bank, 115 Ill.App.3d at 345, 71 Ill. Dec. 210, 450 N.E.2d 898.
We rule that the trial court's finding and grant of the writ of mandamus was not against the manifest weight of the evidence for the following reasons: First, the special use designation is valid because the procedural requirements of the Municipal Code were satisfied; second, we cannot overrule the decisions of the Village Board based upon their alleged failure to follow their own procedural requirements for the enactment of special use designations (see Landmarks Preservation Council of Illinois v. City of Chicago (1988), 125 Ill.2d 164, 179, 125 Ill.Dec. 830, 531 N.E.2d 9; Illinois Gasoline Dealers Association v. City of Chicago (1988), 119 Ill.2d 391, 404, 116 Ill.Dec. 555, 519 N.E.2d 447; Chirikos v. Yellow Cab Co. (1980), 87 Ill.App.3d 569, 574, 43 Ill.Dec. 61, 410 N.E.2d 61); and third, defendants have failed to show by clear and convincing evidence that the special use designation as applied to them is arbitrary, unreasonable, or that it bears no substantial relation to the public health, safety, morals, and welfare. See Bennett v. City of Chicago (1962), 24 Ill.2d 270, 273-274, 181 N.E.2d 96; Chicago Title & Trust Co. v. City of Chicago (1970), 130 Ill.App.2d 45, 50, 264 N.E.2d 730; Chicago & North Western Ry. Co. v. City of Des Plaines (1968), 97 Ill.App.2d 201, 206, 240 N.E.2d 280.
We are not persuaded by defendants' argument. Defendants maintain that the requisite procedures were not complied with for the following three reasons: First, an application for a special use was never filed with the zoning administrator in 1980, in accordance with section 11.7(3)(a) of the ordinance; second, there was no evidence that a hearing took place before the zoning board of appeals pertaining to a special use permit submitted on behalf of the owner of the subject property in accordance with section 11.7(3)(b) of the ordinance and section 11-13-11 of the Municipal Code (Ill. Rev.Stat.1989, ch. 24, par. 11-13-11); and third, there were no findings of fact or recommendations in connection with the granting of special use status as required by section 11.7(3)(d) of the ordinance and sections 11-13-1.1 and 11-13-11 of the Municipal Code. Ill.Rev.Stat.1989, ch. 24, pars. 11-13-1.1, 11-13-11.
We find that the procedural requirements of the Municipal Code were satisfied when the subject property was granted special use status. Defendant stipulated that the ordinance was adopted as a result of a study and a report submitted to the Village Board. The special use designation of the subject property was enacted as one of many zoning changes subsumed within the ordinance. Prior to its adoption, the ordinance, as proposed by the Village Board, was subject to several hearings before both the Village Board and the zoning board of appeals. After the hearings, the ordinance was enacted. The requirement for a hearing was satisfied because it is stipulated that the, hearings were held. In addition, the report furnished to the Village Board prior to the enactment of the ordinance constituted sufficient evidence that the use met standards established for the special use classification. The requirements of findings of fact and the written statement of the relief granted were satisfied by the report submitted to the Village Board.
The record, as cited above, also reveals that defendants complied with some of the procedural requirements of the ordinance. A hearing was held, and findings and recommendations *1367 were submitted to the Village Board. However, the record indicates that no application for a special use was filed, and there is no indication that notice requirements were met.
Although the rules for the application of a special use application and notice requirements were not met, we cannot overrule the decision of the trial court based upon defendants' failure to follow its own requirements for the enactment of special use designations. See Landmarks Preservation Council of Illinois v. City of Chicago (1988), 125 Ill.2d 164, 179, 125 Ill.Dec. 830, 531 N.E.2d 9; Illinois Gasoline Dealers Association v. City of Chicago (1988), 119 Ill.2d 391, 404, 116 Ill.Dec. 555, 519 N.E.2d 447; Chirikos v. Yellow Cab Co. (1980), 87 Ill.App.3d 569, 574, 43 Ill.Dec. 61, 410 N.E.2d 61.
In addition, we find that defendants have failed to meet their burden of proof because they have failed to show by clear and convincing evidence that the ordinance and special use designation, as applied to them, is arbitrary, unreasonable, and that it bears no substantial relation to the public health, safety, morals, and welfare. See Bennett v. City of Chicago (1962), 24 Ill.2d 270, 273-274, 181 N.E.2d 96; Chicago Title & Trust Co. v. City of Chicago (1970), 130 Ill.App.2d 45, 50, 264 N.E.2d 730; Chicago & North Western Ry. Co. v. City of Des Plaines (1968), 97 Ill.App.2d 201, 206, 240 N.E.2d 280.
Furthermore, we find defendants' reliance upon Geneva Residential Association, Ltd. v. City of Geneva (1979), 77 Ill.App.3d 744, 34 Ill.Dec. 177, 397 N.E.2d 849, Speck v. Zoning Board of Appeals of the City of Chicago (1980), 93 Ill.App.3d 460, 48 Ill.Dec. 898, 417 N.E.2d 630, and International Harvester Co. v. Zoning Board of Appeals of the City of Chicago (1963), 43 Ill.App.2d 440, 193 N.E.2d 856, inappropriate. First, we cannot reverse the finding of the trial court based upon Geneva because Geneva has been reversed. (Geneva, (1979), 77 Ill.App.3d 744, 34 Ill.Dec. 177, 397 N.E.2d 849, rev'd on remand (1981), 100 Ill.App.3d 413, 55 Ill. Dec. 418, 426 N.E.2d 564.) Defendants concede that Geneva has been reversed, but they still maintain that the appellate court decision is applicable to the instant case. We disagree. Geneva was an action brought by adjoining landowners to the subject property against the City of Geneva. This action challenged the validity of an ordinance which granting a special use. (Geneva, 77 Ill.App.3d 744, 34 Ill.Dec. 177, 397 N.E.2d 849.) We find that there is a fundamental difference between sustaining a challenge to the validity of a zoning ordinance by interested parties with interests in land adjacent to the subject property, and permitting a municipality to claim that its own ordinance is invalid. Accordingly, we find that the decision of the appellate court in Geneva is distinguishable from the instant case.
Furthermore, we find defendants' reliance upon Speck v. Zoning Board of Appeals of the City of Chicago (1980), 93 Ill.App.3d 460, 48 Ill.Dec. 898, 417 N.E.2d 630, and International Harvester Co. v. Zoning Board of Appeals of the City of Chicago (1963), 43 Ill.App.2d 440, 193 N.E.2d 856, unpersuasive. Defendants rely upon Speck and International Harvester Co. for their assertion that specific findings of fact and reasons are required when an application for special use is granted. (Speck, 93 Ill.App.3d at 469, 48 Ill.Dec. 898, 417 N.E.2d 630; International Harvester Co., 43 Ill.App.2d at 449, 193 N.E.2d 856.) Defendants also rely upon these cases to support their contention that an ordinance granting a special use application must be reversed if proper findings are not made as to required standards, or if the reasons given by the Board do not support the findings. (Speck, 93 Ill.App.3d at 469, 48 Ill.Dec. 898, 417 N.E.2d 630; see International Harvester Co., 43 Ill.App.2d at 449, 193 N.E.2d 856.) We cannot reverse the decision of the trial court pursuant to these cases because Speck has been reversed. (Speck v. Zoning Board of Appeals of the City of Chicago (1980), 93 Ill.App.3d 460, 48 Ill.Dec. 898, 417 N.E.2d 630, rev'd (1982), 89 Ill.2d 482, 60 Ill.Dec. 643, 433 N.E.2d 685.) Moreover, the Illinois Supreme Court has found that we cannot adjudicate an action brought to *1368 overrule the decisions of a legislative body based upon that legislative entity's alleged failure to follow self-imposed requirements. (Landmarks Preservation Council of Illinois v. City of Chicago (1988), 125 Ill.2d 164, 179, 125 Ill.Dec. 830, 531 N.E.2d 9; Illinois Gasoline Dealers Association v. City of Chicago (1988), 119 Ill.2d 391, 404, 116 Ill.Dec. 555, 519 N.E.2d 447; Chirikos v. Yellow Cab Co. (1980), 87 Ill.App.3d 569, 574, 43 Ill.Dec. 61, 410 N.E.2d 61.) Therefore, we cannot overrule the decision of the trial court based upon the Village Board's alleged failure to follow its own requirements for the enactment of special use designations.
Accordingly, we find that the trial court's grant of the writ of mandamus, along with its finding that the procedural requirements were satisfied, was not contrary to the manifest weight of the evidence.

II.
Defendants contend that the trial court's application of the doctrine of estoppel was against the manifest weight of the evidence because the Village Board, in designating the special use for the subject property, failed to comply with section 11-13-1.1 of the Municipal Code (Ill.Rev.Stat.1989, ch. 24, par. 11-13-1.1.) by passing the special use classification without a hearing and any standards or limitations for the motor freight terminal special use. Defendants rely upon Stenson v. Stenson (1977), 45 Ill.App.3d 249, 3 Ill.Dec. 928, 359 N.E.2d 787; In re Estate of Muhammed (1984), 123 Ill.App.3d 756, 79 Ill.Dec. 178, 463 N.E.2d 732, rev'd in part, vacated and dismissed in part (1984), 165 Ill.App.3d 890, 117 Ill.Dec. 444, 520 N.E.2d 795, appeal denied (1984), 119 Ill.2d 557, 119 Ill. Dec. 388, 522 N.E.2d 1247, La Salle National Bank & Trust Co. v. City of Chicago (1984), 128 Ill.App.3d 656, 83 Ill.Dec. 819, 470 N.E.2d 1239, Village of Orland Park v. First Federal Savings & Loan Association of Chicago (1985), 135 Ill. App.3d 520, 90 Ill.Dec. 146, 481 N.E.2d 946, Lawrence v. Board of Education (1987), 152 Ill.App.3d 187, 105 Ill.Dec. 195, 503 N.E.2d 1201, Beverly Bank v. County of Cook (1987), 157 Ill.App.3d 601, 109 Ill.Dec. 873, 510 N.E.2d 941, and Chicago Food Management, Inc. v. City of Chicago (1987), 163 Ill.App.3d 638, 114 Ill.Dec. 725, 516 N.E.2d 880.
Plaintiff, however, maintains that the Village is estopped from asserting that its 10-year-old ordinance was invalid. Plaintiff relies upon People ex rel. Village of Colfax v. Maxon (1891), 139 Ill. 306, 28 N.E. 1074, People ex rel. Joseph Lumber Co. v. City of Chicago (1949), 402 Ill. 321, 83 N.E.2d 592, American National Bank & Trust Co. of Chicago v. Village of Arlington Heights (1983), 115 Ill.App.3d 342, 71 Ill.Dec. 210, 450 N.E.2d 898, La Salle National Bank & Trust Co. v. City of Chicago (1984), 128 Ill.App.3d 656, 83 Ill. Dec. 819, 470 N.E.2d 1239, and Pavlakos v. Department of Labor (1984), 128 Ill. App.3d 783, 84 Ill.Dec. 18, 471 N.E.2d 547.
"Municipalities may adopt zoning ordinances as an exercise of their police power * * *." (People ex rel. Joseph Lumber Co., 402 Ill. at 330, 83 N.E.2d 592.) The Municipal Code has established the following requirements for the enactment of special uses:
"The corporate authorities of any municipality may in its [zoning] ordinances passed under the authority of this Division 13 provide for the classification of special uses. * * * A special use shall be permitted only after a public hearing before some commission or committee designated by the corporate authorities, with prior notice thereof given in the manner as provided in sections 11-13-6 and 11-13-7. A special use shall be permitted only upon evidence that such use meets standards established for such classification in the ordinances, and the granting of permission therefor may be subject to conditions reasonably necessary to meet such standards." Ill.Rev. Stat.1989, ch. 24, par. 11-13-1.1.
Equitable estoppel is a doctrine which may be applied "where a party by his statements or conduct leads another to do something he would not do but for the statements or conduct of the other * * *." *1369 Bank of Pawnee v. Joslin (1988), 166 Ill. App.3d 927, 938, 118 Ill.Dec. 484, 521 N.E.2d 1177; Pavlakos v. Department of Labor (1984), 128 Ill.App.3d 783, 791, 84 Ill.Dec. 18, 471 N.E.2d 547, aff'd (1985), 111 Ill.2d 257, 95 Ill.Dec. 461, 489 N.E.2d 1325.
The party who asserts that equitable estoppel is applicable has the burden of proving the requisite elements of estoppel by "clear, precise and unequivocal" evidence. In re Estate of Muhammad (1984), 123 Ill.App.3d 756, 763, 79 Ill.Dec. 178, 463 N.E.2d 732, rev'd in part, vacated and dismissed in part (1987), 165 Ill. App.3d 890, 117 Ill.Dec. 444, 520 N.E.2d 795, appeal denied (1988), 119 Ill.2d 557, 119 Ill.Dec. 388, 522 N.E.2d 1247; see Stenson v. Stenson (1977), 45 Ill.App.3d 249, 254, 3 Ill.Dec. 928, 359 N.E.2d 787.
Whether or not a party has met its burden of proof with respect to estoppel is a question of fact for the trial court to determine. (Lawrence v. Board of Education (1987), 152 Ill.App.3d 187, 201, 105 Ill.Dec. 195, 503 N.E.2d 1201.) "A court of review will not reverse [a] trial court's decision with respect to estoppel unless it is against the manifest weight of the evidence." Lawrence, 152 Ill.App.3d at 201, 105 Ill.Dec. 195, 503 N.E.2d 1201.
Equitable estoppel may be invoked against a municipal corporation. (Bank of Pawnee v. Joslin (1988), 166 Ill.App.3d 927, 938, 118 Ill.Dec. 484, 521 N.E.2d 1177.) However, as a general rule, equitable estoppel is only applied against a municipality under "`compelling circumstances * * *.'" Bank of Pawnee, 166 Ill.App.3d at 939, 118 Ill.Dec. 484, 521 N.E.2d 1177, citing People ex rel. Brown v. Illinois State Troopers Lodge No. 41 (1972), 7 Ill.App.3d 98, 105, 286 N.E.2d 524; see La Salle National Bank v. City of Chicago (1984), 128 Ill. App.3d 656, 662, 83 Ill.Dec. 819, 470 N.E.2d 1239.
In order to invoke equitable estoppel against a municipality, plaintiffs must prove two elements: "(1) an affirmative act on the part of the municipality; and (2) the inducement of substantial reliance by the affirmative act." (Bank of Pawnee, 166 Ill.App.3d at 939, 118 Ill.Dec. 484, 521 N.E.2d 1177.) For purposes of equitable estoppel, affirmative acts which induce reliance by a party "must be acts of the municipality itself, such as legislation, rather than the unauthorized acts of a ministerial officer." (Emphasis added.) Bank of Pawnee, 166 Ill.App.3d at 939, 118 Ill. Dec. 484, 521 N.E.2d 1177; see Rose v. Rosewell (1987), 163 Ill.App.3d 646, 651, 114 Ill.Dec. 730, 516 N.E.2d 885; Pavlakos v. Department of Labor (1985), 111 Ill.2d 257, 264, 95 Ill.Dec. 461, 489 N.E.2d 1325; American National Bank & Trust Co. v. Village of Arlington Heights (1983), 115 Ill.App.3d 342, 347-48, 71 Ill.Dec. 210, 450 N.E.2d 898; La Salle National Bank, 128 Ill.App.3d at 662, 83 Ill.Dec. 819, 470 N.E.2d 1239.
Although a finding of estoppel against a public body generally is not favored (Bank of Pawnee v. Joslin (1988), 166 Ill.App.3d 927, 938, 118 Ill.Dec. 484, 521 N.E.2d 1177; American National Bank & Trust Co., 115 Ill.App.3d at 347, 71 Ill.Dec. 210, 450 N.E.2d 898; see Chicago Food Management, Inc. v. City of Chicago (1988), 163 Ill.App.3d 638, 645, 114 Ill.Dec. 725, 516 N.E.2d 880), the Illinois Supreme Court has mandated that a municipality is estopped from claiming that its own ordinances are invalid. This rule was enunciated one century ago in the case of People ex rel. Village of Colfax v. Maxon (1891), 139 Ill. 306, 28 N.E. 1074.
In Colfax, the Village of Colfax attempted to pass an ordinance removing a certain territory from its boundaries. The ordinance received a majority of the votes of the board of trustees present. However, the ordinance was not passed by a majority vote of all of the members elected as required by the statute. Therefore, the ordinance was not passed in compliance with the statute. However, the ordinance was published and recognized as valid by the village. Later, the village president and the village board of trustees levied a tax upon the territory which the ordinance purported to remove from the boundaries of the village. Mr. Maxon, the county clerk, refused to "extend" the taxes from residents *1370 of the disconnected territory. Upon his refusal, the Village sought a writ of mandamus to compel Mr. Maxon to "extend" the taxes. (Colfax, 139 Ill. at 308, 28 N.E. 1074.) The Village of Colfax claimed that the ordinance was invalid because it was never enacted. (Colfax, 139 Ill. at 309, 28 N.E. 1074.) Our supreme court made the following ruling:
"[W]hen city or village ordinances are printed in book or pamphlet form, purporting to be published by authority of the board of trustees or city council, such book or pamphlet shall be received as evidence of the passage and legal publication of such ordinances as of the dates mentioned in such book or pamphlet, in all courts and places without further proof. [Citation.] Certainly respondents and all others had a right to act on that which relators had made legal evidence of the passage of the ordinance, which they now seek to treat as invalid.
* * * [T]he village is estopped from claiming any power over the territory in question[] as being within its limits." (Emphasis added.) Colfax, 139 Ill. at 310, 28 N.E. 1074.
More recently, in the case of People ex rel. Joseph Lumber Co. v. City of Chicago (1949), 402 Ill. 321, 83 N.E.2d 592, the City of Chicago made a similar claim with respect to a zoning ordinance after an applicant applied for a permit in reliance upon the ordinance. Specifically, the city argued that its zoning ordinance was improper and invalid because the ordinance was unrelated to the public health, morals, safety, or general welfare. (Joseph Lumber Co., 402 Ill. at 331, 83 N.E.2d 592.) The court held that "[t]he city cannot deny the validity of the ordinance * * *, which it passed and which remained in full force and effect * * *." (Joseph Lumber Co., 402 Ill. at 331, 83 N.E.2d 592.) The court also stated that plaintiff's rights were "not subject to collateral attack from the city on the ordinance * * *." Joseph Lumber Co., 402 Ill. at 331, 83 N.E.2d 592.
In the instant case, we find that the trial court properly ruled that defendant was estopped from asserting that its zoning ordinance was not validly enacted. We must affirm the trial court's ruling as it was not against the manifest weight of the evidence. See Lawrence v. Board of Education (1987), 152 Ill.App.3d 187, 201, 105 Ill.Dec. 195, 503 N.E.2d 1201.
Plaintiff in this case had the burden of proving the requisite elements of estoppel by "clear, precise, and unequivocal" evidence. (In re Estate of Muhammed (1984), 123 Ill.App.3d 756, 763, 79 Ill.Dec. 178, 463 N.E.2d 732, rev'd in part, vacated and dismissed in part (1987), 165 Ill. App.3d 890, 117 Ill.Dec. 444, 520 N.E.2d 795, appeal denied (1988), 119 Ill.2d 557, 119 Ill.Dec. 388, 522 N.E.2d 1247; see Stenson v. Stenson (1977), 45 Ill.App.3d 249, 254, 3 Ill.Dec. 928, 359 N.E.2d 787.) The record shows, and the trial court properly found, that plaintiff met its burden of proof by establishing the elements of estoppel clearly, precisely, and unequivocally. Defendants are now attempting to disclaim a portion of an ordinance which was validly enacted by the Village Board. Defendants' ordinance was enacted more than 10 years ago on January 21, 1980. Subsequently, the ordinance was amended on November 23, 1987. The special use designation of the subject property has been in existence since 1980 when an asterisk was placed on the zoning map to indicate this classification. Plaintiff relied upon the motor freight terminal special use designation in contracting to purchase, and in closing the sale of the subject property. The ordinance was printed under the authority of the Village Board when defendants placed an asterisk on the zoning map on behalf of Bellemead. This court must view the zoning map as evidence of the passage of the ordinance. We find that plaintiff had a right to rely upon the ordinance which defendants now seek to treat as invalid. Under the circumstances, defendant cannot deny the validity of its ordinance. People ex rel. Village of Colfax v. Maxon (1891), 139 Ill. 306, 310, 28 N.E. 1074; People ex rel. Joseph Lumber Co. v. City of Chicago (1949), 402 Ill. 321, 331, 83 N.E.2d 592.
In addition, we find that defendants' reliance upon Pavlakos v. Department of *1371 Labor (1984), 128 Ill.App.3d 783, 84 Ill.Dec. 18, 471 N.E.2d 547, Beverly Bank v. County of Cook (1987), 157 Ill.App.3d 601, 109 Ill.Dec. 873, 510 N.E.2d 941, American National Bank & Trust Co. v. Village of Arlington Heights (1983), 115 Ill.App.3d 342, 71 Ill.Dec. 210, 450 N.E.2d 898, and Treadway v. City of Rockford (1962), 24 Ill.2d 488, 182 N.E.2d 219, inappropriate and unpersuasive. In the instant case, defendants maintain that the acts of the Village Board were insufficient to support the trial court's invocation of estoppel. Defendants rely upon these cases as authority to support their assertion that the trial court improperly applied estoppel against them.
American National Bank, Beverly Bank, and Pavlakos articulate the general rules which are applicable to most situations involving the invocation of equitable estoppel against a municipality. Defendants have correctly noted that these cases state that "insufficient affirmative acts" by a municipality (American National Bank, 115 Ill.App.3d at 347, 71 Ill.Dec. 210, 450 N.E.2d 898), and the "nonaction" of governmental officers (Beverly Bank, 157 Ill. App. at 607, 109 Ill.Dec. 873, 510 N.E.2d 941; Pavlakos, 128 Ill.App.3d at 792, 84 Ill.Dec. 18, 471 N.E.2d 547), are insufficient to support a court's application of estoppel against a municipality. However, defendants' reliance upon these cases is inappropriate because the rule of estoppel enunciated in People ex rel. Village of Colfax v. Maxon (1891), 139 Ill. 306, 28 N.E. 1074, and People ex rel. Joseph Lumber Co. v. City of Chicago (1949), 402 Ill. 321, 83 N.E.2d 592, is the rule which is applicable to the specific situation in the instant case.
Furthermore, Pavlakos and Beverly Bank are factually distinguishable from the case at bar. First, Pavlakos v. Department of Labor (1984), 128 Ill.App.3d 783, 84 Ill.Dec. 18, 471 N.E.2d 547, does not concern zoning. In Pavlakos, the following issues were before the court: Whether "(1) section 2600 [of the Unemployment Insurance Act (Ill.Rev.Stat.1979, ch. 48, par. 750)] violate[d] the equal protection and due process clauses of the Illinois and United States constitutions; (2) [whether] the Department of Labor * * * is barred by the doctrines of estoppel and laches from recovering the unpaid contributions, interest, and penalties; and (3) [whether] the findings of fact of the Director of Labor are against the manifest weight of the evidence." (Emphasis omitted.) Pavlakos, 128 Ill.App.3d at 786, 84 Ill.Dec. 18, 471 N.E.2d 547.
Second, Beverly Bank v. County of Cook (1987), 157 Ill.App.3d 601, 109 Ill.Dec. 873, 510 N.E.2d 941, is distinguishable because the principal issue before the court was whether a State law preempted the county's zoning authority, and whether the county was estopped from exercising its zoning authority. (Beverly Bank, 157 Ill. App.3d at 602, 109 Ill.Dec. 873, 510 N.E.2d 941.) Plaintiff in the case at bar does not question or challenge defendants' zoning authority. Furthermore, in Beverly Bank, plaintiffs' contract to purchase the subject property was contingent upon their being able to develop the subject property into a sanitary landfill. (Beverly Bank, 157 Ill. App.3d at 603, 109 Ill.Dec. 873, 510 N.E.2d 941.) In addition, the permit to develop the subject property was issued contingent upon plaintiffs' obtaining zoning approval. (Beverly Bank, 157 Ill.App.3d at 603, 109 Ill.Dec. 873, 510 N.E.2d 941.) In the instant case, the subject property was developed as a motor truck freight terminal before it was purchased by plaintiff. In addition, the development of the subject property was not contingent upon obtaining zoning approval because the subject property was already zoned and designated for special use by a motor truck freight terminal.
Furthermore, we find that Treadway v. City of Rockford (1962), 24 Ill.2d 488, 182 N.E.2d 219, which defendants rely upon in their reply brief is also distinguishable from the instant case. In Treadway, plaintiffs, who consisted of "an adjoining property owner and nearby neighbors" (Treadway, 24 Ill.2d at 489, 182 N.E.2d 219), challenged the validity of a zoning ordinance which rezoned a parcel of "residential" property into a "business" district. (Treadway, 24 Ill.2d at 489, 182 N.E.2d 219.) Plaintiffs alleged that the ordinance *1372 was invalid due to the city's "failure to follow the requisite procedural steps in its enactment." (Treadway, 24 Ill.2d at 489, 182 N.E.2d 219.) Although the court found that a municipality must comply with procedural requirements for amending a zoning ordinance (Treadway, 24 Ill.2d at 496, 182 N.E.2d 219), we find that Treadway is distinguishable from the instant case for the following reason: The parties in Treadway who challenged the validity of the ordinance were citizens who had interests in the land adjacent to the subject property, while in the case at bar the municipality itself has claimed that its own ordinance is invalid. Treadway is distinguishable from the instant case for the same reason that Geneva Residential Association, Ltd. v. City of Geneva (1979), 77 Ill.App.3d 744, 34 Ill.Dec. 177, 397 N.E.2d 849, is distinguishable from the case at bar. We noted above that there is a fundamental difference between sustaining a challenge to the validity of a zoning ordinance by interested parties with interests in land adjacent to the subject property, and permitting a municipality to claim that its own ordinance is invalid.
Finally, an important policy consideration prevents us from finding for defendants. A municipality should not be able to assert that its own laws are invalid because courts rely upon published ordinances. The Code of Civil Procedure (Ill. Rev.Stat.1989, ch. 110, par. 1-101 et seq.) accords facial validity to enacted statutes. Section 8-1001 of the Code of Civil Procedure provides that courts of original jurisdiction "shall take judicial notice of * * *: All general ordinances of every municipal corporation within the State." (Ill.Rev. Stat.1989, ch. 110, par. 8-1001.) Courts should not be subject to the risk that at a time or circumstance unknown to them, a municipality may arbitrarily declare that their ordinance is invalid.
Accordingly, we find that the trial court's application of the doctrine of estoppel was not contrary to the manifest weight of the evidence.

III.
Finally, defendants allege that the trial court erred when it found that plaintiff was not required to submit a special use application for its proposed expansion. Defendants fail to cite any Illinois case law in support of their position.
Plaintiff maintains that no further special use application is required. Plaintiff relies upon Nott v. Wolff (1960), 18 Ill.2d 362, 163 N.E.2d 809, Radio Relay Corp. v. Illinois Commerce Comm'n (1977), 69 Ill.2d 95, 12 Ill.Dec. 724, 370 N.E.2d 528, Pioneer Trust & Savings Bank v. County of Cook (1978), 71 Ill.2d 510, 17 Ill.Dec. 831, 377 N.E.2d 21, Oak Park Trust & Savings Bank v. Village of Elmwood Park (1969), 113 Ill.App.2d 121, 251 N.E.2d 788, Parkview Colonial Manor Investment Corp. v. Board of Zoning Appeals of the City of O'Fallon (1979), 70 Ill.App.3d 577, 26 Ill.Dec. 876, 388 N.E.2d 877, and Service Transportation Lines, Inc. v. Illinois Commerce Comm'n (1979), 77 Ill.App.3d 52, 32 Ill.Dec. 738, 395 N.E.2d 1119.
Our supreme court has held that "[s]ubstantial weight [must be] accorded [to a] long-standing interpretation of a statute by the administrative body charged with its application." Radio Relay Corp., 69 Ill.2d at 101, 12 Ill.Dec. 724, 370 N.E.2d 528; see Service Transportation Lines, Inc., 77 Ill. App.3d at 55, 32 Ill.Dec. 738, 395 N.E.2d 1119.
However, this court has found that "[w]here special exception uses are provided for, they have their genesis in the ordinance[,] and the body to which the power of administering them is delegated[] must look to the terms of the ordinance itself for the measure of its power." (Emphasis added.) Parkview Colonial Manor Investment Corp. v. Board of Zoning Appeals of the City of O'Fallon (1979), 70 Ill.App.3d 577, 581, 26 Ill.Dec. 876, 388 N.E.2d 877.
This court has also found that a zoning map may be equivalent to a zoning ordinance. Specifically, the court ruled that in construing a zoning ordinance, a court cannot ignore a use classification which has been marked on a zoning map and incorporated into the ordinance. Oak Park Trust & Savings Bank v. Village of Elmwood *1373 Park (1969), 113 Ill.App.2d 121, 125, 251 N.E.2d 788.
In accordance with the mandate of the Illinois Supreme Court, we will give "substantial weight" to the Village Board's grant of special use status to the subject property in 1984 because it is a long-standing interpretation of the ordinance by the administrative body charged with its application. (See Radio Relay Corp. v. Illinois Commerce Comm'n (1977), 69 Ill.2d 95, 101, 12 Ill.Dec. 724, 370 N.E.2d 528; see Service Transportation Lines, Inc. v. Illinois Commerce Comm'n (1979), 77 Ill. App.3d 52, 55, 32 Ill.Dec. 738, 395 N.E.2d 1119.) In 1984, the Village Board interpreted its ordinance as not requiring the owner of the subject property to submit a special use application in order to expand its facility. (See Parkview Colonial Manor Investment Corp. v. Board of Zoning Appeals of the City of O'Fallon, 70 Ill. App.3d 577, 581, 26 Ill.Dec. 876, 388 N.E.2d 877.) In 1984, three permits were issued by the Village Board to Bellemead for the expansion of the motor truck freight terminal on the subject property. These permits approved the construction of additional docking space which included the erection of additional "overhead doors." The special use designation in the instant case was incorporated in the ordinance when the zoning board placed an asterisk on the zoning map to designate the special use on behalf of Bellemead. We view the zoning maps as evidence of the passage of the ordinance. See People ex rel. Colfax v. Maxon (1891), 139 Ill. 306, 310, 28 N.E. 1074.
Defendants must allow land use which the zoning map designates as permissible. (See Oak Park Trust & Savings Bank v. Village of Elmwood Park (1969), 113 Ill. App.2d 121, 125, 251 N.E.2d 788.) Defendants denied plaintiff a permit to construct what the zoning map has designated an approved use. As the trial court observed, "[i]n the instant case * * * plaintiff[] [does] not seek to use the property in any manner which [differs] from the published zoning ordinance." If re-application for a special use does not specifically appear in the ordinance, such a requirement cannot be implied. (See Parkview, 70 Ill.App.3d at 581, 26 Ill.Dec. 876, 388 N.E.2d 877.) No provision of the ordinance expressly states that a re-application must be made.
Accordingly, we find that the trial court did not err when it ruled that plaintiff was not required to submit a new application for a special use.
For the aforementioned reasons, we affirm the judgment of the trial court.
Affirmed.
JIGANTI, P.J. and LINN, J., concur.